394 A.2d 1011

**Marilyn SHAPERA, Appellant,**

v.

**Gerald A. LEVITT, D.D.S.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1977.

Decided Nov. 22, 1978.

Gordon David Fisher, Pittsburgh, with him Kaufman & Harris, Pittsburgh, for appellant.

Harry J. Gruener, Pittsburgh, with him Litman, Litman, Harris & Specter, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This is an appeal from a final order of the Family Division of the Court of Common Pleas of Allegheny County dismissing appellant's complaint against appellee for the support of their minor son, now 15 years of age.

The parties were married in June, 1962, and had one child, Todd Allen, born August 25, 1963. They were divorced in July, 1965, at which time they executed a separation agreement providing, *inter alia*, for the custody of the son by the mother (appellant) and payments of $125 a month by the father (appellee) for the support of the son. Under the

terms of a later custody order the son spends two summer months and frequent weekends with the father.

Both parties have remarried. Appellant and her husband, a physician, are the parents of an 8 year old daughter who resides with them. Appellee is a dentist with an office and an active practice in South Hills Village in Upper St. Clair Township. He and his wife have no children of their own but a minor daughter of the wife's by a prior marriage resides with them. The child's natural father pays $150 a month for the support of this child.

When the parties executed the 1965 agreement appellee was just out of dental school and earning approximately $125 a week as a dentist. He has continued in that profession and over the years his earnings have increased to a gross income of $44,000 in 1975 and a net income for that year of about $19,200, or about $1,600 a month.

With the exception hereinafter noted, appellee has paid appellant $125 a month for the support of their son since July, 1965, except during the two summer months each year which the son spends with his father. The son attended St. Edmond's Academy from the first through the seventh grades and, at the time of the support hearing, was enrolled in Shadyside Academy. For three of the years at St. Edmond's Academy the appellee paid the annual tuition of approximately $1,100 in lieu of monthly support payments, this by agreement of the parties.

In addition, the appellee has made substantial expenditures directly to or for the benefit of his son on a voluntary but irregular basis. Most commonly these expenditures have been for clothing or numerous items of sporting and recreational equipment, usually purchased when the son and father were together and without consultation with appellant. The father estimates that these supplemental expenditures for his son may have averaged $125 a month; but from the details revealed by the record, we would conclude that they were probably somewhat less, although substantial.

Appellant submitted a detailed budget showing that the cost of maintaining the son averaged $1,587.38 per month in 1975 of which $774.85 was attributable to private schooling at Shadyside Academy and psychiatric treatments. The psychiatric treatments have been discontinued and, because of the appellee's objection to private schooling at this period in the son's life, appellant agreed to make no claim, retroactively or prospectively, for reimbursement for the extra expense of a private school. The elimination of these two items reduces the appellant's budget for her son to $812.53 a month.

■ The hearing judge concluded that the son was being well cared for under existing arrangements and that a support order against the father might be detrimental to the boy's best interests apparently because it might have the effect of curtailing the amount of money the father now spends on the son when they are together and thus diminish their rapport. While it is true that a child's best interests are a paramount consideration, it is equally true since the adoption of the Equal Rights Amendment to the Pennsylvania Constitution, Article I, Section 28, that "Support . . . is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability." *Conway v. Dana*, 456 Pa. 536, 540, 318 A.2d 324, 326 (1974); *Commonwealth ex rel. Buonocore v. Buonocore*, 235 Pa.Super. 66, 69, 340 A.2d 579 (1975). We conclude that the hearing judge did not give sufficient consideration to this second factor and that the order dismissing the complaint must be reversed.

■■ On the record before us, the father is contributing $125 to an $812 budget for the son and the mother is contributing the balance. This appears to us to be disproportionate to their respective abilities. In determining an equitable contribution to be made by the father to the mother as custodial parent consideration should be given to the extent of his property, his income, his earning ability and his station in life. He may be required to make personal sacrifices to furnish a child with its basic necessities,

although the order should not be unfair or confiscatory. The purpose of a support order is the welfare of the child and not the punishment of the parent: *Conway, supra,* 456 Pa. at p. 538, 318 A.2d 324.

If the appellant, with the cooperation and support of her husband, is able to maintain the son in a standard of living beyond that which the appellee can maintain for his family, the cost of this disparity in living standards should not be imposed on the appellee. As we said in *Commonwealth ex rel. Bowie v. Bowie,* 89 Pa.Super. 288, 290–291 (1926) where the mother and child were being supported in comparative affluence by the parents of the mother and the mother sought a support order based upon that life style—

"If the father and mother of this child had not been divorced and she would ask for support, she would be entitled to an allowance sufficient to maintain her in a manner reasonably warranted by the station in life and financial resources of her husband. *Betz v. Betz,* 70 Pa. Superior Ct. 396. The amount fixed for the support of the child must be determined by the same standards."

The 1965 agreement of the parties does not preclude the court below from entering a support order in a different amount although the agreement can be considered as some indication of what the parents believed to be fair at the time: *Hecht v. Hecht,* 189 Pa.Super. 276, 279, 150 A.2d 139 (1959). The situation has changed significantly since 1965. Inflation has badly eroded the purchasing power of appellee's payments. The son has grown from an infant to young manhood and it obviously costs more to feed and clothe a teenage son than a baby. The financial condition of the appellee has greatly improved. The $125 monthly payment. mutually agreed upon in 1965 was then about a quarter of appellee's income. Today it is less than one-twelfth of his net income.

We cannot consider the expenditures that the appellee volunteers for his son as a substitute for a support order. The mother, as the custodial parent, has the responsibility of maintaining a home and providing the necessities of life for

the son. She is entitled to the certainty that a reasonable contribution will be made toward that expense and must be in a position to control the expenditures for the necessities of the young man's existence. Gifts to the son beyond that standard are, of course, welcomed by the son and may contribute to his happiness and well-being; but they cannot be made a substitute for a fair contribution to the custodial parent for basic support.

■ The circumstances of the parties have quite possibly changed since the hearing. The son, now 15 years of age, is presumably an upper classman at Shadyside Academy and within three years of reaching his legal majority. The financial data before us are based on 1975 earnings and expenditures. Those for 1977 and probably 1978 should be available at a rehearing. They may disclose financial circumstances quite different from those disclosed by the 1975 data on which the court relied. In examining income tax figures it should be remembered that we are not searching for a technical net income but rather the cash flow available for family expenditures: *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 308, 310 A.2d 672 (1974). A deduction for depreciation on office equipment, proper in tax accounting, is not a reduction from cash flow, which is more significant than taxable income in determining the appropriate amount of a support order.

■ Likewise, the practice adopted by appellee of withholding support payments when the son was with him during summer months is not appropriate in a support order. It fails to consider that, except for the item of food, expenses continue even though the son may not be in the mother's custody for the visitation period with the father. A support order necessarily includes a reasonable amount for the maintenance of the home wherein the child resides permanently. Many of those expenses remain constant despite the fact that the child may be temporarily absent from the home: *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa.Super. 115, 123, 184 A.2d 291 (1962).

The appellant is entitled to a support order based upon current data and consistent with the foregoing guidelines. Reversed.

PRICE, J., files a dissenting statement, in which JACOBS, President Judge, joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I dissent. The court below has quite properly considered the best interests of the child and also taken into account the substantial additional contributions made by appellee. I find no error in this judgment and support the very able opinion entered. I would, therefore, affirm on the opinion of the court below.

JACOBS, President Judge, joins in this dissenting statement.