426 A.2d 123

**Joanne R. PRESCOTT (Nalitz), Appellant,**

v.

**Donald James PRESCOTT.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Feb. 20, 1981.

James D. Belliveau, Braddock, for appellant.

Alice Dobson, Pittsburgh, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

Joanne R. Prescott (Nalitz) has appealed from the trial court's order denying her petition for collection of arrearages and granting her ex-husband's petition for cancellation of arrearages accrued pursuant to an order for support dated August 5, 1979 providing for payment of support in the amount of $25 per week and $5 per week on arrearages. Appellant disputes the weight given by the lower court to payments made by appellee directly to or on behalf of the parties' children. She contends that although she did accept some money from her ex-husband directly, outside of the court order, the lower court improperly credited appellee for these payments with the result that it decided to cancel all the arrearages. Mrs. Nalitz does not disagree that the arrearages should have been partially remitted. Her claim is that the court abused its discretion to remit arrearages in this instance by cancelling all the arrearages owed.

That the trial court has the power to remit arrearages is without question.[1] However, it must in doing so take into consideration all relevant factors. *Commonwealth ex rel. Fryling v. Fryling*, 220 Pa.Super. 68, 283 A.2d 726 (1971).

The period before the court was limited by stipulation to August 18, 1970 to December 31, 1974 and not "to the present" as stated in the trial court opinion. As of August

1. Act of June 19, 1939, P.L. 440, No. 250, 17 P.S. § 263, repealed and replaced, Act of July 9, 1976, P.L. 586, No. 142 § 2, effective June 27, 1978, 42 Pa.C.S.A. § 323.

18, 1970, the arrearages amounted to $4,747.50, according to the records kept by the Allegheny County Family Division's Collection and Disbursement Office. The trial court found that the arrearages as of August 18, 1970 amounted to $3,497.50 but gave no explanation as to how it arrived at this figure. From an examination of the record, we are unable to ascertain the basis for the trial court's finding. For the period before the court, the arrearages totaled $7,754.50, based on certain calculations.[2]

█ Appellant contends that the trial court erred in allowing her ex-husband credit for certain payments and calls our attention to items contained in a part of the record entitled, "Summary of Defendant's Case" apparently drawn up by appellee's counsel for the trial court's benefit and upon which the trial court appears to have placed a great deal of reliance. The Summary refers to certain medical expenditures, such as, "Balance of Orthodontia for Charles," for $1,050, *contracted January, 1975*. Clearly, this amount is outside the period ending December 31, 1974, and the court below should not have given appellee credit for this payment.

In addition, of the $2,184 amount indicated in the Summary as being for medical expenses, $409 of the amount was

2. The parties stipulated that the August 5, 1970 order had an effective period of 227 weeks (August 18, 1970 to December 31, 1974), arrived at by a determination of when the last of the children left appellant's residence. The trial court changed this figure to 187 weeks (which appellant does not now dispute), by finding that the amount of time the children did *not* spend with appellant, which was credited to appellee, was 40 weeks rather than the 52 week figure originally stipulated to by counsel. Therefore, of the total 227 weeks, the court credited appellee with 40 weeks which, when subtracted from 227, leaves an effective period of 187 weeks. The parties also stipulated that appellee should be given credit for certain payments totaling $1,668. The $7,754.50 figure was arrived at as follows:

| | |
|---|---|
| Amount of arrearages owed as of August 5, 1970 | $4,747.50 |
| Amount due on order for support | 4,675.00 |
| (187 weeks x $25 per week) | $9,422.50 |
| Less allowed credits stipulated to by the parties | 1,668.00 |
| Total arrearages owed for period from August 5, 1970 to December 31, 1974 | $7,754.50 |

paid after December 31, 1974; and it was error for the court to give appellee credit for this amount.[3] Appellee also should not have been given credit for a check issued to his son, Joseph, dated February 1, 1976 for the same reason.[4]

Appellant also contends that the court below erred in allowing appellee credit for payment of "non-essential" items. An examination of the record and of appellee's testimony indicates that many of these payments were for items such as birthday and Christmas gifts,[5] boy scout equipment (T. 68), camping equipment (T. 72), scuba diving lessons (T. 73), and a color television set (T. 70).

The trial court conceded that "there is some doubt . . . as to the amount represented by these checks which would be

3. Check # 883, dated January 2, 1975, for $25 (R. 25a).
   Check # 888, dated January 9, 1975, for $50 (R. 25a).
   Check # 915, dated February , 1975, for $44 (R. 25a).
   Check # 930, dated February 11, 1975, for $25 (R. 26a).
   Check # 942, dated February , 1975, for $50 (R. 26a).
   Check # 964, dated March 14, 1975, for $50 (R. 26a).
   Check # 967, dated March 17, 1975, for $25 (R. 26a).
   Check # 978, dated April 1, 1975, for $25 (R. 26a).
   Check #1041, dated May 21, 1975, for $50 (R. 27a).
   Check #1042, dated May 21, 1975, for $25 (R. 27a).
   Check #1043, dated May 21, 1975, for $40 (R. 27a).
   TOTAL    $409

4. Check # 1263 (R. 12a).

5. Although the record is replete with photocopies of checks written by appellee for the parties' four sons, the checks themselves generally do not indicate the purpose(s) for which they were written. However, an analysis of the checks, contained in appellant's brief as Appendices 1 and 2, clearly reveals that the dates on many of them coincide with the dates of the children's birthdays or of Christmas. One example is check # 1100, made out to Joseph Prescott, dated February 1, 1972, the date of his birthday. Other checks were written on December 27, 1971, December 25, 1971 and December 25, 1973, corresponding to the date on which Christmas falls each year.

Also, some of the checks were written after the eighteenth birthday of the named child and, as such, should not have been credited to appellee. The breakdown is as follows:

Checks made out to Donald, Jr., who reached 18 on December 29, 1969: # 802, dated February 8, 1971; # 870, dated April 11, 1971; # 959, dated August 27, 1971; and # 991, dated September 28, 1971.

considered gifts for birthdays, Christmas or special situations as compared to everyday support requirements." In another part of the opinion, the court, in finding that appellee should be given credit for the payments made by him directly to or on behalf of the boys, states: "[F]or these he should be given credit, *allowing, of course, for certain discrepancies for gifts and so forth. . .*" (Emphasis added.) By these statements, the court acknowledged that many of the checks were for nonessential items and indicated that an adjustment should be made accordingly. However, the court made no such adjustment.[6] On the subject of voluntary expenditures made by a non-custodial parent for nonessential items such as recreational, and sporting equipment, we stated in *Shapera v. Levitt,* 260 Pa.Super. 447, 394 A.2d 1011 (1978):

> We cannot consider the expenditures that the appellee volunteers for his son as a substitute for a support order. The mother, as the custodial parent, has the responsibility of life for the son. She is entitled to the certainty that a reasonable contribution will be made toward that expense and must be in a position to control the expenditures for the necessities of the young man's existence. Gifts to the son beyond that standard are, of course, welcomed by the son and may contribute to his happiness and well-being; but they cannot be made a substitute for a fair contribution to the custodial parent for basic support. Id., 260 Pa.Super. at 452–453, 394 A.2d at 1014.

■ Here, we find that appellee should not have been given credit for these expenditures for nonessential items, especially in light of the fact that because of appellee's failure to make regular support payments, appellant was

Checks made out to Joseph, who reached 18 on February 1, 1972: # 1147, dated February 26, 1972; # 1199, dated May 17, 1972; # 1263, dated February 1, 1976; # 713, dated July 3, 1974; # 743, dated July 3, 1974; and # 562, dated January 26, 1974.

6. The only adjustment made by the court concerned the amount claimed to have been paid by appellee for the boys' lunch and spending money each week, which the court reduced by one-third.

forced to go on public assistance. The fact that appellee chose to purchase luxury items for his sons does not change the fact that he had a court-ordered obligation to contribute to their basic support and welfare first, which he failed to do.

█ We find, in light of the record in this case, that the lower court abused its discretion in completely canceling all of the arrearages owed. An abuse of discretion does not necessarily imply a willful abuse, but if,

> [I]n reaching a conclusion, the law is overridden or misapplied *or the judgment exercised is manifestly unreasonable as shown by the evidence or the record,* discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. One 1961 Buick Special 4–Door Sedan,* 204 Pa.Super. 293, 295, 204 A.2d 288, 289 (1964). (Emphasis added.) *Adelman v. John McShain, Inc.,* 148 Pa.Super. 138, 24 A.2d 703 (1942).

Here, the trial court's action in canceling all of the arrearages was "manifestly unreasonable" as shown by the evidence, and we, therefore, reverse.

Order is reversed and remanded with directions to determine the issue of arrearages, if any, and to grant appropriate relief consistent with the views expressed in this opinion.