480 A.2d 991

**Arden E. MELZER, Appellant,**

**v.**

**Lynn L. WITSBERGER, Appellee.**

Supreme Court of Pennsylvania.

Argued March 8, 1984.

Decided July 13, 1984.

---

466

Harry J. Cancelmi, Jr., Thompson & Baily, Waynesburg, for appellant.

Rochelle S. Friedman, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

LARSEN, Justice.

Appellant Arden Melzer and appellee Lynn Witsberger were divorced in 1978. On August 20, 1980, appellant was awarded custody of the parties' two minor children.[1] In December, 1980, appellant filed a complaint, demanding support from appellee for the two minor children in the amount of $400 per month. During the following year the Greene County Court of Common Pleas held two hearings on appellant's complaint. Subsequently, appellee also filed a complaint for support for travel expenses incurred during visitations with her children.

The hearing court found the following facts:

The father [appellant] is a professor at the University of Pittsburgh, living on and now owning, in his own name a

---

1. At the time the custody order was entered, the children were ages 9 and 14. Although appellant has legal custody of the two children, appellee enjoys liberal visitation. According to the parties' briefs (the custody order is not part of the record in this case), the children spend two and one-half weekends per month during the school year, at least half the holidays each year, and at least six weeks each summer with appellee.

farm, located in the western section of this county [Greene County], with a second wife, and the two children. In 1978, he earned $29,726.00, $30,000.00 in 1979, and $32,085.00 in 1980, these being gross earnings. In 1981, his gross pay was $2755.00 per month, with deductions of $1889.00, and when adjusted for certain additional expenses, left a take-home pay of $1524.66, out of which he supported himself and family. Also he had a mortgage payment, and a judgment note acquired to pay several expenses accumulated from the marital separation, with mortgage payments of $260.00 per month and monthly payments on the $12,000.00 judgment note. Also, he had travel expenses to and from Pittsburgh, real estate taxes, utility payments, and farm maintenance costs.

The mother [appellee], at the time, was employed as a social worker at Mercy Hospital [in Pittsburgh], was living in Wheeling, was then married, and commuted to her work. At the date of the first hearing she had just accepted a position at Montefiore Hospital in Pittsburgh as head of Social Services with an annual gross pay of approximately $22,500.00. At the time of the second hearing she was divorced, had moved to Pittsburgh, and had leased a 3-bedroom apartment there. Her gross income in 1981, was $28,000.00, paid at the rate of $1076.00 bi-weekly, with a net pay of $687.14. Also she owns a house in Wheeling worth $48,000.00 from which she received a rental of $340.00, which she stated, was only enough to pay the debt charge, taxes, insurance and maintenance. On her visits with the children, she testified that they share several recreational activities which require more money than the travel expense, and the normal living expenses incidental to the visits.

When examined closely, the mother has approximately $1364.00 per month to cover her living expenses, while the father has $1524.66 for his and the children's living expense.

On March 29, 1982, the hearing court dismissed both complaints,[2] concluding:

> This is a slightly disproportionate financial circumstance considering the mother has the children only part time. However, we are persuaded that the father has failed to prove his entitlement to a contribution for support from the mother, and certainly vice versa. We believe the several factors which must and have been considered cancel out any support entitlement from one parent to the other, and each parent shall be responsible for their separate, albeit disparate, parental financial duties.

On appeal, the Superior Court affirmed. *Melzer v. Witsberger*, 315 Pa.Super. 626, 463 A.2d 28 (1983). We granted appellant's petition for allowance of appeal in order to set forth uniform guidelines for the calculation of child support.

> The fundamental requirements of child support are clear. In the matter of child support we have always expressed as the primary purpose the best interest and welfare of the child .... Support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability.

*Conway v. Dana*, 456 Pa. 536, 540, 318 A.2d 324, 326 (1974). *See also Costello v. LeNoir*, 462 Pa. 36, 40, 337 A.2d 866, 868 (1975) ("[E]very parent has a duty to support his or her minor children ... in accordance with the parents' respective abilities to pay ....").

Nevertheless, we have never established an orderly method for the calculation of support awards. Rather, our courts have been guided by numerous general principles created by our appellate courts. While there is no shortage of case law announcing these principles, there is a total lack

**2.** The hearing court also cancelled the $100 per month visitation subsidy it had previously directed appellant to pay to appellee. The order requiring the $100 per month payment was entered at the conclusion of the parties' custody proceeding in 1980 and was vacated by the Superior Court on appeal from the custody order. *See Melzer v. Witsberger*, 299 Pa.Super. 153, 445 A.2d 499 (1982).

of organization with respect to how these principles interact and how they should be applied in order to arrive at an appropriate award of support.

This lack of organization becomes critical in cases such as this one, in which: 1) since their divorce, both parents have remarried and redivorced;[3] 2) both parents have adequate incomes to allow for some flexibility in their life styles and methods of child-rearing; 3) both parents have custody of their children for substantial periods of time; and 4) each parent disapproves of certain expenditures by the other parent, either for the benefit of the children or for the benefit of the other parent.[4]

In cases such as this, there are simply too many relevant factors for a court to weigh without the introduction of some system to guide the court in applying the law to the facts of each case. We have concluded that in order to clarify the application of the case law in this area, it is necessary to set forth a guideline—a kind of checklist—to assist hearing courts in child support cases. The purpose of such a guideline is not to divest a hearing court of its authority or discretion to consider all the relevant facts and

**3.** Appellant was divorced from his second wife on February 17, 1983, almost one year after the court of common pleas entered its order in this case.

**4.** For example, appellant has determined that certain medical care is necessary for his children and has undertaken to provide them with that care. At the hearing, however, appellee testified, "I'm not really hep on that kind of treatment, but that is what they are in. It doesn't make sense to me."

On the other hand, appellee's budget includes numerous recreational expenses and she testified at the hearing:

Yes, I take them on vacations at a very large expense. The last time we went on a canoe trip for 7 or 8 days, and we went on a car trip through New England. We camp out. I take the kids skiing on the weekends. I take them to shows; I take them to museums. All that costs a good bit of money.

While appellant testified that "I am delighted that Mrs. Witsberger voluntarily does those things with the kids. I think that's just wonderful," he nevertheless felt that these vacations were being taken at his expense: "To put it in a capsule, I'm put in a position of buying bread on credit, and I think that's absurd.... Mrs. Witsberger seems to be saying she can indulge them champagne things and that I should be restricted to the peanut butter things."

circumstances in each case, since the resolution of each case must still be based upon those facts and circumstances; rather, its purpose is simply to provide the hearing court with a method for organizing and considering those facts and circumstances in an orderly fashion. We therefore direct that in the future, child support awards should be calculated based upon the following guidelines.

■ In order to define the support obligation of each parent, a court must first determine the needs of the children:[5] a court has no way of arriving at a reasonable order of support unless it knows how much money is actually required to care for the children involved. Thus, the Superior Court has held that "for purposes of determining whether the rule of *Conway v. Dana* was satisfied it is necessary to know the expenses entailed in child support." *Downie v. Downie,* 314 Pa.Super. 548, 551, 461 A.2d 293, 294 (1983). *See also Commonwealth ex rel. Lyle v. Lyle,* 248 Pa.Super. 458, 462, 375 A.2d 187, 189 (1977).

■ We agree with the Superior Court, with the proviso that parents are legally obligated to provide only for the *reasonable* expenses of raising their children. *See Tubb v. Middlebrooks,* 379 So.2d 1272, 1274 (Ala.Civ.App.1979) (emphasis added) ("It is the rule that the amount of support a parent may be required to pay is to be determined by the *reasonable* needs of the children and the reasonable ability of the parent to pay.").

■ This is not to say that children are entitled only to the bare necessities; parents do have an obligation to share with their children the benefit of their financial achievement. *See Conway, supra* 456 Pa. at 538, 318 A.2d at 325 ("station in life of the parties" is relevant in determining parents' capacity to support their children). Thus, where the parents' incomes permit, it may be perfectly proper for a court to recognize that certain expenditures for recrea-

5. This determination, as well as the determination of the parents' respective abilities to pay support, must be made as of the time at which support payments are sought. *Costello, supra* 462 Pa. at 40, 337 A.2d at 868.

tion, entertainment, and other nonessential items are reasonable and in the best interest of the children. *See Spingola v. Spingola,* 91 N.M. 737, 580 P.2d 958, 964 (1978) ("Where the income, surrounding financial circumstances and station in life of the father demonstrates an ability on his part to furnish additional advantages to his children above their actual needs, the trial court should provide such advantages within reason.").

Nevertheless, neither parent should be obligated to pay for "extras"—those items which go beyond what is reasonably necessary for the children's welfare—in which that parent does not concur. Neither parent should be permitted to increase the parties' support obligations by unilaterally indulging the children in things which are not reasonably necessary for their well-being.

We hold, therefore, that in each case the hearing court must first calculate the reasonable expense of raising the children involved, based upon the particular circumstances—the needs, the custom, and the financial status—of the parties. *See Bethea v. Bethea,* 43 N.C.App. 372, 258 S.E.2d 796, 799 (1979) ("What constitutes necessities depends upon the facts and circumstances of the particular case. They include food, clothing, lodging, medical care and proper education. They are not limited to those things which are absolutely necessary to sustain life, but extend to articles that are reasonably necessary for the proper and suitable maintenance of the child in view of his social station in life, the customs of the social circle in which he lives or is likely to live and the fortune possessed by him and his parents.").

The court must next determine, as a matter of fact, the respective abilities of the parents to support their children. This Court has held that "[e]ach parent's ability to pay is dependent upon his or her property, income and earning capacity ...." *Costello, supra* 462 Pa. at 40, 337 A.2d at 868. In arriving at the amount which a parent can contribute to the support of his or her children, the court

must "make due allowance for the *reasonable* living expenses of the parent." *Id.* (emphasis added). Thus, a parent may not voluntarily decrease his or her ability to provide child support by making unreasonable or unnecessarily large expenditures for his or her own benefit. *Cf. Weiser v. Weiser,* 238 Pa.Super. 488, 491, 362 A.2d 287, 288 (1976) ("It is undisputed that a father or husband cannot intentionally reduce his actual earnings and then use the reduction in earnings to obtain a reduction in the amount of support he must provide for his family."). *See also Henderson v. Lekvold,* 95 N.M. 288, 621 P.2d 505, 509 (1980) (Duty of support is not decreased "when a parent voluntarily assumes an excessive financial burden only for . . . his convenience and investment."); *County of Stanislaus v. Ross,* 41 N.C.App. 518, 255 S.E.2d 229, 232 (1979) ("[Father] may not avoid his duty to support his minor children simply by spending all of the money he earns.").

Once the court has determined the reasonable needs of the children and the amount of each parent's income which remains after the deduction of the parent's reasonable living expenses, it must calculate each parent's total support obligation in accordance with the following formula:[6]

6. For example, assume that parent A has $15,000/year available for support, that parent B has $5,000/year available for support, and that it costs $6,000 to support that couple's child for one year. The parents' total annual support obligations would be calculated as follows:

Parent A's total support obligation $= \dfrac{15,000}{15,000 + 5,000} \times 6,000 = \$4,500$

Parent B's total support obligation $= \dfrac{5,000}{15,000 + 5,000} \times 6,000 = \$1,500$

With a total of $20,000 available for child support, parent A is obligated to provide 75% of the support required ($4,500) and parent B must provide the remaining 25% ($1,500).

We note at this point that the amount of time a parent spends with his or her children has no bearing on that parent's obligation of support. Even a parent who never sees his or her children has a duty to support those children to the best of his or her ability.

$$\text{Mother's total support obligation} = \frac{\text{Mother's income available for support}}{\text{Mother's income available for support} + \text{Father's income available for support}} \times \text{Child(ren)'s needs}$$

$$\text{Father's total support obligation} = \frac{\text{Father's income available for support}}{\text{Mother's income available for support} + \text{Father's income available for support}} \times \text{Child(ren)'s needs}$$

Once each parent's total support obligation has been defined, the court must determine what portion of that obligation may be offset by support provided directly to the children, and what portion of the support obligation must be satisfied by way of support payments to the other parent. It is clear that at least some portion of both parents' total support obligations may be fulfilled by the provision of support directly to the children. As the Supreme Court of Oregon has noted,

> child support itself may take forms other than direct monetary contribution [to the custodial parent]. It may take the form of payments for medical care ..., life insurance in the child's name on a parent's life ..., a trust for the child's education ..., or hospital, medical or dental insurance. All such forms of indirect support must be included in determining the just and proper contribution of a parent toward the support and welfare of the child.

*Smith v. Smith*, 290 Or. 675, 626 P.2d 342, 344 (1981).

As with the other elements of child support, a parent may receive credit against his or her support obligation only for those expenditures which actually satisfy the obligation of reasonable and necessary support; a parent should receive no credit for making voluntary payments for those "extras" which do not constitute support in the first

We also note that a parent's total support obligation is not the equivalent of an award of support entered against that parent. Each parent's total support obligation includes support provided directly to the child, as well as support which is paid to the other parent for the child's benefit.

place.[7] *See Prescott v. Prescott*, 284 Pa.Super. 430, 434–435, 426 A.2d 123, 125 (1981) ("[The father] should not have been given credit for these expenditures for nonessential items .... The fact that [the father] chose to purchase luxury items for his sons does not change the fact that he had a court-ordered obligation to contribute to their basic support and welfare first, which he failed to do."); *Shapera v. Levitt*, 260 Pa.Super. 447, 453, 394 A.2d 1011, 1014 (1978) ("Gifts to the son ... are, of course, welcomed by the son and may contribute to his happiness and well-being; but they cannot be made a substitute for a fair contribution to the custodial parent for basic support.").

Finally, any amount of his or her total support obligation for which a parent does not receive credit must be paid to the other parent as child support for the benefit of the children, in accordance with the following formula:

$$\text{Support to be paid to father} = \text{Mother's total support obligation} - \text{Support provided by mother directly to children}$$

7. We emphasize that any credit for support provided directly to the child must be based upon the figures submitted to the court at the time of hearing, and may be calculated *only* by the hearing court in arriving at an award of support. A parent is never permitted to unilaterally reduce a court-ordered support payment in order to compensate him or herself for expenditures on behalf of a child.

For example, if a parent does not normally spend money on his or her child, the parent will receive no credit for support provided directly to the child. If the parent is then ordered to pay $150 per month as child support, the parent must continue to pay $150 every month, regardless of any subsequent expenditures on behalf of the child; if the parent has spent $25 on clothes for the child, the parent may not reduce that month's support payment to $125. If another parent regularly spends $25 per month on clothes for his or her child, the parent may bring that fact to the attention of the hearing court and the court may consider that fact in determining the parent's credit for support provided directly to the child. If the court then orders that parent to pay $150 per month as child support, that parent must also pay $150 per month, regardless of any expenditures for the child. If that parent subsequently spends $50 in one month for the child's clothing, that parent also may not reduce his or her support payment to offset the amount spent on clothes.

Of course, if the overall circumstances of any of the parties change —i.e., a decrease in income, an increase in regular monthly expenses—either parent may apply to the court for a modification of a support order.

| Support to be paid to mother | = | Father's total support obligation | − | Support provided by father directly to children |
|---|---|---|---|---|

 We turn now to the arguments of the parties. Appellant argues that the Superior Court erred in affirming the order of the hearing court because that court abused its discretion in refusing to grant him an award of support.[8] Specifically, appellant argues that the court of common pleas abused its discretion because it failed to consider evidence of the actual cost of raising the children; and because it offset appellee's recreational, gift and visitation expenses against her obligation of support.[9]

8. Our scope of review in support cases is limited. "[T]he amount of a support order is largely within the discretion of the trial court, and its judgment should not be disturbed on appeal absent a clear abuse of that discretion." *Costello, supra* 462 Pa. at 40–41, 337 A.2d at 868.
"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused."
*In Re Women's Homoeopathic Hospital of Philadelphia,* 393 Pa. 313, 316, 142 A.2d 292, 294 (1958) (citation omitted).

9. Appellant also argues that the hearing court abused its discretion because it concluded that appellant had to prove an entitlement to support, and because it was biased against men who seek awards of support from women. Neither of these arguments has merit.
We read the lower court's statements concerning appellant's failure to prove an "entitlement" to support to mean simply that the hearing court concluded that appellant had failed to prove that he needed, and that appellee was able to provide, financial assistance for the benefit of their children.
In addition, there is no evidence on the face of this record that the hearing court exhibited a prejudice against appellant because of his sex. Appellant claims that such prejudice is evidenced by the facts that the hearing court included in its custody order an unsolicited "visitation subsidy" for appellee, that the hearing court took fifteen months to issue an order in this case, and that the hearing court did not properly assess the credibility and attitude of appellee. However, since the visitation subsidy ordered by the lower court was part of the custody proceeding, a matter not now before us, we are not in a position to judge the lower court's motivation for that award. Further, we fail to see how a delay of fifteen months between the filing of appellant's complaint and the lower court's order in this case reflects

■■■■■ It is clear that the court of common pleas erred when it failed to make any findings concerning the needs of the children in this case. However, with respect to the lower court's offset of appellee's expenditures for recreation, gifts and visitation with her children against her obligation of support, we cannot properly review the lower court's actions because that court failed to make the factual determinations necessary for a resolution of this issue. We note simply that to the extent any of these expenses are unreasonable or unnecessary for the well-being of the children, they may not be used to offset either parent's support obligation.

■■■ In addition, appellee contends that the lower court erred in its calculation of appellant's ability to provide child support because it failed to consider the income of appellant's second wife, and because it failed to consider the propriety of appellant's monthly contributions to his pension plan.[10]

> The Superior Court has held, correctly, that although there is nothing in our law which requires the new spouse to support minor children of the first marriage, ... if the second wife was gainfully employed and if her earnings or a portion thereof was contributed to the family budget, such facts would be relevant in determining the father's ability to pay for his minor children.

*Commonwealth ex rel. Travitzky v. Travitzky,* 230 Pa.Super. 435, 440, 326 A.2d 883, 885 (1974). Accordingly, any portion of appellant's wife's income which was used to defray family expenses would be relevant to a determina-

any bias against the appellant. Finally, the demeanor and credibility of witnesses are issues solely for the trier of fact. *Kay v. Kay,* 460 Pa. 680, 683, 334 A.2d 585, 586 (1975). While some of the lower court's factual findings may not be supported by substantial evidence—and in view of our disposition of this case we draw no conclusion in this regard—any such errors on the part of the hearing court certainly do not evidence any partiality against appellant.

10. Although appellee has not filed an appeal in order to preserve these issues for our review, we feel it necessary to address them briefly for the benefit of the lower court on remand.

tion of appellant's ability to contribute to the support of his children.

█ With respect to appellant's pension plan, however, we do not feel that appellant should be permitted to reduce his ability to provide support for his children by making voluntary contributions to the plan.[11] Although appellant's interest in providing for his retirement is legitimate and understandable, his primary legal obligation is to his children and he may not diminish his ability to provide for them in order to ensure a more comfortable retirement for himself. This is not to say that appellant may not make voluntary contributions to his pension plan; however, such contributions are not *reasonable* living expenses and they may not be used to decrease appellant's total support obligation.

Accordingly, the order of the Superior Court is reversed and the case is remanded to the court of common pleas for a recalculation of the parties' support obligations consistent with the guidelines set forth in this opinion.

ZAPPALA and PAPADAKOS, JJ., join this opinion.

FLAHERTY and McDERMOTT, JJ., join this opinion and FLAHERTY, J., files a separate concurring opinion which McDERMOTT, J., joins.

HUTCHINSON, J., files a concurring opinion.

NIX, C.J., files a dissenting opinion.

FLAHERTY, Justice, concurring.

I join the majority opinion, but, sharing the concerns expressed in the concurring opinion authored by Mr. Justice Hutchinson, I join with the understanding that indeed the mathematical formulae therein set forth provides, "... a framework for decision in these difficult support cases.", and that this constitutes nothing more than a *guideline,*

---

**11.** Involuntary contributions to appellant's pension plan may be considered in determining his ability to pay support since appellant has no control over the disposition of those funds.

". . . relevant in this and most such cases." Certainly, ". . . the individualized judgment of an experienced trial judge . . ." is essential and irreplaceable. So understanding the majority opinion, I join it.

McDERMOTT, J., joins this concurring opinion.

HUTCHINSON, Justice, concurring.

I agree with the majority that this case should be remanded but only because that court failed to account for the needs of the child in setting its support order.

I also believe that guidelines and mathematical formulae can help a court by providing a framework for decision in these difficult support cases. Moreover, I believe that all the factors set forth in the majority opinion are relevant in this and most such cases. As such, I commend them to our trial courts for consideration. However, I believe the majority opinion unduly emphasizes their use in a mechanistic way which cannot replace the individualized judgment of an experienced trial judge. I would therefore treat this case as one involving review of a matter in the trial judge's discretion and remand it to him because I believe he failed to take into account an essential factor in exercising that discretion, the needs of the child.

NIX, Chief Justice, dissenting.

I must express my strong disagreement with the majority's unwise and unwarranted attempt to transform the highly sensitive process of determining the equitable allocation of responsibility for child support into a rigid and sterile mathematical exercise. Moreover, the soundness of the proposed mechanistic formula has yet to be satisfactorily demonstrated.[1] The formula approach urged by appel-

1. Although the factors identified are legitimate, the majority has failed to establish the appropriateness of assigning each factor a fixed value in an equation to be uniformly applied in all cases. The proper weight to be given such factors depends on the facts of the individual case.

lant and embraced by the majority is primarily influenced by the views of a single practitioner in the field.[2]

The majority's hastily concocted guidelines are thus being promulgated without the benefit of adequate guidance from those with expertise in this highly complex and controversial area. Nor can this Court realistically lay claim to the expertise which would assure the reliability of its equation. Moreover, a determination as to the wisdom and necessity of adopting such mandatory guidelines would normally rest with the legislature. Even if the Court could properly make that judgment, it should do so through the rulemaking process and only after thorough study and input from bench and bar.[3]

I can discern no basis for the majority's conclusion that mathematical certainty is an adequate surrogate for judicial sensitivity. It is essential to our system of justice that such determinations be made on an individualized basis, according proper weight to all relevant factors and recognizing the unique characteristics of each family situation. The uniform guidelines imposed upon the process relieve the court of its responsibility to balance the equities in each case, allowing the court to hide behind a mathematical formula and detracting from actual consideration of the parties' situation. Thus I am constrained to conclude that reliance on such a formula is jurisprudentially unsound and constitutes an imprudent exercise of this Court's supervisory power.

**2.** Appellant relies on three articles by Maurice R. Franks, Esquire, a Colorado attorney. *See* Franks, *Summing Up Child Support: A New Formula,* District Lawyer (July-August, 1983); Franks, *How to Calculate Child Support,* 86 Case & Comment 3 (1981); Franks, *The Mathematical Calculation of Child Support,* 2 Family L.Rev. 260 (1979). The majority's formula is strikingly similar to the one developed by Mr. Franks in those articles.

**3.** Although it can be argued that the majority has offered this formula only as an aid to the trial court in reaching its decision, experience demonstrates that undue reliance will be placed upon the results of the mathematical computations, particularly in close cases, rather than upon the wisdom and the experience of the jurists entering the order.