## Sims v. Sims

*Michael R. Rundle,* special counsel for Domestic Relations Office.

*Mary B. Seiverling,* for Department of Public Welfare.

*Donald R. Dorer,* for defendant.

BAYLEY, *J.,* September 30, 1987 — The docket on the support case reflects the following:

(1) The support order against defendant commenced on September 16, 1968. It originally required him to support his wife and three children and later was amended to require him to support an additional child.

(2) On October 21, 1985 the order was suspended. At that point the total arrearage totaled $16,070.

(3) From October 1, 1980 to October 17, 1984 the court order then in effect in the amount of $20 accrued to the benefit of the Department of Welfare. During this period the total support due was $4,220.

(4) From October 1, 1980 to November 1, 1985, defendant voluntarily did not work so that he could provide care for his second wife who was terminally ill. He never petitioned the court to modify the order during this period. When his wife died in October of 1985 the total arrearages accruing on the support order of $20 per week during this period amounted to $5,300.

(5) No order has been in effect since October 21, 1985. The current arrearage is $13,068.24.

(6) The reduction in the arrearages since the order was suspended on October 21, 1985 has resulted from defendant being given a credit of $700 for 35 weeks at $20 per week in 1981 for a period of time when he was personally on welfare. Additionally, $480.76 was intercepted from the Federal Internal Revenue Service from his 1985 withholding taxes, and $1,021 was intercepted in the same manner from his 1986 withholding taxes. Defendant made $160 in direct payments in 1986 and $640 in 1987

toward the reduction of arrearages. The total reduction came to $3,001.76, which when subtracted from $16,070 leaves a current arrearage of $13,068.24.

(7) When the order was suspended on October 21, 1985 and the arrearages were set at $16,070, those arrearages were on the amount that was due on the order as of October 17, 1984. The additional amount due from October 17, 1984 until the wife suspended the order on October 21, 1985 was forgiven by the wife.

Defendant has filed a petition asking this court to remit a portion of his current arrearages. A hearing was held which produced the following evidence. Petitioner, age 46, is a high school graduate who lives with his seven year old son by his second marriage. The boy is now in the first grade. They live in a rental property for which the Housing and Urban Development Department now pays the full rental of $347 based upon his current income status. Following his second wife's death petitioner ultimately obtained employment as a warehouseman and delivery man in October 1986. He was earning $5.86 an hour and working a 40 hour week with some overtime. He was hospitalized for a period of time in November, went back to work and then went back into the hospital for an intestinal problem in December. Later he had back surgery for the removal of some vertebrae as well as arthroscopy knee surgery. His physical problems are complicated by a diabetic condition. He is still off work but hopeful of shortly obtaining medical clearance to return to a job he believes is waiting. Initially, he received 60 percent of his salary in disability payments although starting September 20 he receives disability at the rate of $621 per month. He believes that he will probably lose his HUD rental assistance upon the receipt of

this disability. He also receives a $435 per month survivor's benefit as a result of the death of his second wife.

Defendant was employed most of the time prior to October 1980 when his second wife became ill although he never earned more than approximately $10,000 a year. He admits that the court order in effect until his second wife became ill was reasonable. The record reflects that the case was a constant enforcement problem and defendant has spent time in jail for contempt. The only moneys that defendant received during the period of his second wife's illness came from welfare and disability payments on her behalf.

## DISCUSSION

Initially, the Department of Public Welfare, a party to this case, maintains that courts are now without authority to remit arrearages in Pennsylvania support cases. Support matters generally are governed by Act 66 of 1985, 23 Pa.C.S. §4301 et seq.[1] Section 4352 provides:

"(a) *General rule*—The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order without limiting the right of the obligee to institute additional proceedings for support in any county in which the obligor resides or in which property of the obligor is situated.

"(b) *Transfer of action*—Where neither party to the action resides or is employed in the county wherein the support action is filed, the court may

1. October 30, 1985, P.L. 264, §1 et seq. Such orders are also subject to Pa. R.C.P. 1910.1-1910.31.

transfer the matter to any county wherein either party resides or where defendant is regularly employed. If one of the parties resides outside of this commonwealth, the action may be transferred to the county of residence or employment of the other party.

"(c) *Foreign support orders*—The court may modify registered foreign support orders when the foreign court declines, surrenders or determines that is is an inappropriate forum to modify the decree. *The court may at any time remit, correct or reduce the amount of arrearages.*

"(d) *Applicability*—This section applies to all support orders whether entered under this chapter or any other statute." (emphasis supplied)

Act 66 replaced the Judicial Code provisions at 42 Pa.C.S. §6710 et seq., regarding support actions.[2] Section 6710 of the repealed act provided:

"The court making the order shall at all times maintain jurisdiction of the cause for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding such order, without limiting the right of a complainant to commence additional proceedings for support in any county wherein the defendant resides or where this property is situated. The court may modify registered foreign support orders when the foreign court declines, surrenders or determines that it is an inappropriate forum to modify the decree. *The court may at any time remit, correct or reduce the amount of any arrearages.* This section shall apply to all support orders whether entered pursuant to this chapter or any other provision of law." (emphasis supplied)

---

2. Act of April 28, 1978, P.L. 202, §10(88) et seq.

'The department maintains that there is currently no authority to remit arrearages in a Pennsylvania support case because Act 66 specifically limits such authority to remitting arrearages on foreign support orders pursuant to section 4352(c). No appellate authority exists construing this section and we are aware of no trial court opinions deciding the issue. In *Commonwealth ex rel. Chrstos v. Chrstos,* 156 Pa. Super. 238, 40 A.2d 165 (1944), the Superior Court noted:

"In the case of *Commonwealth ex rel. Martin v. Martin,* 134 Pa. Super. 345, 4 A.2d 217, decided January 31, 1939, we held that a support order is *not irrevocable; it remains* under the control of the court in so far as making changes affecting the future payments are concerned, but an order may not be made that applies retroactively, remitting all or part of arrearages due and unpaid. The legislature, within a few months after that decision was filed, saw fit to pass the Act of June 19, 1939, P.L. 440, 17 P.S. §263, which provides as follows: 'Any order heretofore or hereafter made by any court of the commonwealth for the support of a wife, child or parent, may be altered, repealed, suspended, increased, or amended, and the said court may, at any time, remit, correct or reduce the amount of any arrearages, as the case may warrant.' The court making a support order now is in complete control and may not only increase or reduce the amount payable, but it may deal effectively with arrearages."

As set forth by the Superior Court in *Prescott v. Prescott,* 284 Pa. Super. 430, 426 A.2d 123 (1981), "[T]hat the trial court has the power to remit arrearages is without question." The court in *Prescott* noted that the Act of June 29, 1939 referred to in *Commonwealth ex rel. Martin v. Martin, supra,* was repealed and replaced by the Act of July 9,

1976. That was the original Judicial Code provision, section 6710, which was later amended in 1978 and 1980, and then repealed and replaced by Act 66 in 1985. The language used in Act 66 is the same as in section 6710 of the Judicial Code except that Act 66 incudes a separate section for the transfer of an action by breaking up the prior statute into four subparagraphs. Section 4352(a)(b)(c) and (d) read exactly the same as in section 6710 of the Judicial Code except for the addition of sub-section (b) "transfer of action." Section 4352 contains the same language as to "applicability," that "[T]his section applies to all support orders whether entered under this chapter or any other statute."

In light of *Commonwealth ex rel. Chrstos v. Chrstos, supra,* and the analysis in *Commonwealth ex rel. Martin v. Martin, supra,* we conclude that the authority of courts in Pennsylvania to remit support arrearages is solely statutory. Accordingly, we must determine whether the manner in which the legislature in Act 66 revised the support provision it repleaded in section 6710 of the Judicial Code, reflects its intention to remove the authority of Pennsylvania courts to remit arrearages on domestic support orders which had been authorized initially by the Act of June 29, 1939.

The object of all statutory interpretation and construction is to ascertain and effectuate the intent of the general assembly. 1 Pa.C.S. §1921(a). We are to consider, among other matters:

"(1) The occasion and necessity for the statute.

"(2) The circumstances under which it was enacted.

"(3) The mischief to be remedied.

"(4) The object to be attained.

"(5) The former law, if any, including other statutes upon the same or similar subjects.

"(6) The consequences of a particular interpretation.

"(7) The contemporaneous legislative history.

"(8) Legislative and administrative interpretations of such statute." 1 Pa.C.S. §1921(c)(1) through (8). E.g., *Pennsylvania Higher Education Assistance Agency v. Abington Memorial Hospital,* 478 Pa. 514, 387 A.2d 440 (1978). In addition, it is presumed that the general assembly did not intend an absurd or unreasonable result. 1 Pa.C.S. §1922(1). E.g., *Valley Forge Industries Inc. v. Armand Construction Inc.,* 38 Pa. Commw. 603, 394 A.2d 667 (1978). Moreover, "[W]e note that in construing a statute, sections of the statute must be construed with reference to the entire statute and not alone." *In the Interest of Jones,* 286 Pa. Super. 574, 586, 429 A.2d 671, 677 (1981). Furthermore, "[W]e adhere to the well settled principle of construction that the language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object." *Busy Beaver Building Centers Inc. v. Tueche,* 295 Pa. Super. 504, 512, 442 A.2d 252, 256 (1981).

We conclude that the legislature did not intend to remove the authority of Pennsylvania courts to remit arrearages in domestic support cases when it drafted section 4352 of Act 66. The operative language of section 4352 must be construed with reference to the entire statute, and not just subparagraph (c) standing alone. See *In the Interest of Jones, supra*; 1 Pa.C.S. §1932(a) (parts of statutes are in pari materia when they relate to the same thing). This construction logically flows from the language of subparagraph (d) of section 4352, which provides "*[T]his section applies to all support orders whether entered under this chapter or any*

*other statute.*" Furthermore, the conclusion that Pennsylvania courts retain the authority to remit domestic arrearages is in harmony with the subject matter and general purpose and object of section 4352, which is to provide for continuing jurisdiction over support orders. *Busy Beaver Building Centers,* supra. The consequences of the interpretation which the department would have us adopt would be to decrease that jurisdiction. 1 Pa.C.S. §1921(c)(4) and (6). Moreover, the prior law at 42 Pa.C.S. §6710, expressly authorized the courts to remit arrearages. 1 Pa.C.S. §1921(c)(5).

Statutes should be construed as part of a general and uniform system of jurisprudence — even if such a construction may seem contrary to the letter of the statute. See *Commonwealth of Pennsylvania, Department of Public Welfare v. Woolf,* 276 Pa. Super. 433, 419 A.2d 535 (1980). If the legislature had intended to specifically remove the authority of Pennsylvania courts to remit domestic arrearages it would not have retained section 4352(d) in its present form. The revised statute does not convince us that the legislature intended such a result suggested by the department. See *Blount v. Smith,* 440 F. Supp. 528 (M.D. Pa. 1977).

One conclusion is supported further by that section of the Statutory Construction Act which addresses repeals and reenactments. Section 1962 states:

"Whenever a statute is repealed and its provisions are at the same time reenacted *in the same or substantially the same* terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights liabilities incurred under such earlier statute are preserved and may be enforced." (emphasis added) 1 Pa.C.S. §1962.

As we have already noted section 4352 embodies

the same terms as in 42 Pa.C.S. §6710, with the sole difference being the subdivision necessitated by the addition of the transfer of action provision in subparagraph (b). Accordingly, we hold that Pennsylvania trial courts continue to retain the authority to remit domestic support arrearages.

In considering whether an order in the present case should be remitted "[t]he court must take into consideration all relevant factors, and deal with the order as the case may warant." *Commonwealth ex rel. Crane v. Rosenberger*, 212 Pa. Super. 144, 239 A.2d 810 (1968), citing *Commonwealth ex rel. Chrstos v. Chrstos, supra.*[3] We must examine the evidence to determine whether the remission of an arrearage is warranted and must evaluate all the circumstances as well as the rights and obligations of the parties before acting on a petition of this nature. See *Commonwealth ex rel. Belin v. Belin*, 268 Pa. Super. 428, 408 A.2d 862 (1979). The court has "[b]road discretionary power to remit accrued support arrearages." *Commonwealth v. Vogelsong*, 311 Pa. Super. 507, 457 A.2d 1297 (1983). See also *Dunbar v. Dunbar*, 291 Pa. Super. 224, 435 A.2d 879 (1981).

Considering the aforesaid facts and standards, we will exercise our discretion and remit $3500 of defendant's arrearages. This represents the total amount accruing on the order from October 1, 1980 when he stopped work to care for his ill wife, until the order was suspended less the $700 credit he has already received for the 35 weeks during 1981 when he was personally on welfare. In light of the reasonableness of the amount of the order prior to the de-

---

3. See also *Commonwealth ex rel. Fryling v. Fryling*, 220 Pa. Super. 68, 283 A.2d 726 (1971); *Prescott v. Prescott, supra.*

fendant stopping work to care for his wife, and his ability to pay that order prior to that time, we conclude that the arrearages accruing on the order prior to October 1, 1980 do not warrant a remittitur.

For the foregoing reasons, the following order is entered:

## ORDER OF COURT

And now, this September 30, 1987, the sum of $3500 is remitted from defendant's arrearages in the within support case.