[J-82-2017] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
# MIDDLE DISTRICT

| | | |
|---|---|---|
| MICHAEL HANRAHAN, | : | No. 19 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court of Pennsylvania dated November |
| | : | 18, 2016 at Nos. 1638 EDA 2015 & |
| v. | : | 1702 EDA 2015 which |
| | : | Affirmed/Reversed/Remanded the |
| | : | Order of the Court of Common Pleas of |
| JEANNE BAKKER, | : | Delaware County, Civil Division, dated |
| | : | June 1, 2015, entered June 4, 2015 at |
| Appellee | : | No. 2008-16689. |
| | : | |
| | : | ARGUED: November 28, 2017 |

## CONCURRING OPINION

**JUSTICE WECHT**                                                        **DECIDED: June 19, 2018**

I join the Majority's superb opinion, parting ways with it only as to one aspect of its textual rationale.

The reasonable needs of the child are the animating force of our child support guidelines. Those guidelines are authorized by 23 Pa.C.S. § 4322, which mandates that child support "shall be awarded pursuant to a Statewide guideline" and that the "guideline shall be based upon the reasonable needs of the child . . . and the ability of the obligor to provide support." 23 Pa.C.S. § 4322(a). In determining the child's reasonable needs, "the guideline shall place primary emphasis on the net incomes and earning capacities of the parties." *Id.*

In standard income cases, sufficient economic data exist such that the guidelines account reliably for the reasonable needs of the child based upon the net incomes of the parents. No such economic data exist for high income cases. I agree with the Majority

that the remedy for this lack of data is the explicit consideration of the child's reasonable needs as part of the three-step process outlined in Pa.R.C.P. 1910.16-3.1. Specifically, in the third step of the support calculation, the court must consider the Pa.R.C.P. 1910.16-5(b) deviation factors. That consideration must determine the child's reasonable needs.

The analytical challenge lies in the fact that the child's reasonable needs are not listed explicitly as one of the deviation factors identified in Rule 1910.16-5(b). The Majority concludes that the reasonable needs are "overarching criteria . . . served through application of the articulated factors." Maj. Op. at 26. The Majority holds that "nearly all of the factors speak" to reasonable needs or ability of the obligor to pay. *Id.* By thus discerning reasonable needs in the penumbra of the deviation factors, the Majority is able to support its conclusion that the trial court must determine and account for those needs in calculating support orders in high income cases.

While I join in the conclusion, I arrive there by a different interpretive path. Unlike the Majority, I believe that the reasonable needs consideration is rooted textually in the deviation factors rather than being an emanation of them or an overarching theme to which they speak. In my view, assessment of the reasonable needs of the child lies squarely within factor (b)(7): the "standard of living of the parties and their children." Pa.R.C.P. 1910.16-5(b)(7).[1] A child's standard of living necessarily reflects the child's reasonable needs. In determining the child's standard of living, the trial court necessarily

---

[1]    In *Ball v. Minnick*, 648 A.2d 1192, 1197 (Pa. 1994), this Court rejected the idea that the (b)(7) deviation factor would support a finding that a standard income guideline amount of child support should be lowered because the children's basic needs could be met with a lesser amount. That might appear to conflict with my conclusion that reasonable needs is part of the (b)(7) deviation factor. However, the *Ball* Court clarified that "subsection (7) was not intended to justify the downward modification of the guideline figures absent a showing of special needs and/or circumstances." *Id.* In high income cases, the lack of economic data is a special circumstance that justifies consideration of the (b)(7) deviation factor to adjust the presumptive guideline figure. Therefore, my position reconciles with *Ball.*

determines the child's reasonable needs. To be sure, parents (or other parties) can (and often will) disagree about the reasonableness of certain needs or about what constitutes an appropriate standard of living. That determination is left to the discretion of the trial court, upon development of an appropriate evidentiary record.

Reliance on deviation factor (b)(7) for the reasonable needs inquiry is substantiated by the detailed expense statement that we require in high income cases. In such cases, in addition to typical living expenses, parties also must submit information regarding amounts spent each month on behalf of a child for tutoring, lessons, clothing, haircare, summer camp, entertainment, vacations, gifts, children's parties, the child's allowance, and other items. Pa.R.C.P. 1910.27(c)(2)(B). These questions probe the child's standard of living, an analysis that necessarily includes consideration of the child's reasonable needs.

In cases like today's, where a parent experiences a sudden large increase in income, the historical data submitted on the expense statements may not always accurately or fully reflect the recent developments in the child's standard of living and, therefore, in the child's reasonable needs. The trial court may well find that the standard of living and reasonable needs change when an obligor's annual income increases significantly, as it did here for example, from approximately $2.3 million to approximately $15.5 million. But that decision lies within the trial court's discretion, rather than in a rote mathematical exercise. And that discretion is employed to address the child's reasonable needs, not automatically to effectuate a parental wealth transfer or windfall.

To be sure, this case marks no return to *Melzer v. Witsberger*, 480 A.2d 991 (Pa. 1984). Rather, the trial court is required to consider the deviation factors as the final step in the three-step high income support calculation. One of those factors is expressly the child's standard of living. Therefore, while the trial court must evaluate the child's

reasonable needs, it does so within the context of our support guidelines and our Rules of Civil Procedure, and not through a *Melzer* rubric.

Our rules recognize that high income support cases are different. This is reflected in the three-step process in Rule 1910.16-3.1, the obligatory consideration of the Rule 1910.16-5 deviation factors, and the required detailed expense statement. All of these mandates stem from the lack of economic data that might otherwise allow us to tie the presumptive support calculation in step 1 of Rule 1910.16-3.1 to the reasonable needs of the child.

If the parties' combined monthly net income is below $30,000, reliable economic information is available and forms the basis for the guideline amount. For that reason, Rule 1910.16-3.1(a) states that the final support amount in high income cases "shall in no event be less than the amount of support that would have been awarded if the parties' combined net monthly income were $30,000." A high income party may not lower his or her child support obligation below this threshold by attempting to prove that his or her child can subsist on a more frugal standard of living.[2]

Our child support guidelines are grounded in the child's reasonable needs and the obligor's ability to pay. When we have economic data, the child's reasonable needs are accurately and reliably reflected in the guideline amount. However, as evidenced by our rules, high income cases follow a distinct procedure. In those cases, trial courts are expressly required to consider the child's standard of living, which necessarily includes a determination of the child's reasonable needs. Because I find that deviation factor (b)(7)

---

[2] Because we have the economic data to identify reliable support amounts tied to the parties' incomes in standard income cases, *Ball* remains good law for those cases. In such cases, the fact that a child's reasonable needs could arguably be met by a lesser amount of support is not a permissible deviation factor, as there is a strong presumption that the guidelines amount of support is the amount required to satisfy the child's reasonable needs.

mandates a review of the child's reasonable needs in high income cases, I differ with the Majority's rationale on that point. I join the Majority's opinion in all other respects.