## Prud'homme v. Prud'homme

C.P. of Lehigh County, no. DR-99-00819.

*John R. Mondschein,* for plaintiff.
*Nancy P. Wallitsch,* for defendant.

*EN BANC,* REIBMAN, BLACK AND STEINBERG, *JJ.*

BLACK, *J.,* September 28, 2000—At issue in this case is the request of plaintiff, Rosemarie Prud'homme (Wife), for alimony pendente lite from defendant, Laurence Prud'homme (Husband). Before the court is Husband's motion that Wife be compelled to itemize the disposition of all funds received on account of support since July 15, 1999, and to produce copies of the following: (1) her retainer agreement with her attorney, (2) all bills and statements submitted by her attorney to her, and (3) all checks written by her and other documents relating to her expenses after the date of the parties' separation. Wife objects to providing this information and producing these documents on the ground that the information and documents are not relevant to a determination of APL and are not reasonably calculated to lead to the discovery of admissible evidence.[1] Husband contends that Wife must first establish financial need through an in-

---

1. There is no pending claim for counsel fees in this proceeding.

come and expense analysis before she qualifies for APL, and therefore that her post-separation expenses are relevant. We believe that Wife's position is correct, and therefore Husband's motion to compel is denied.

Husband's request for a special listing of Wife's APL claim, pursuant to Pa.R.C.P. 1910(j)(1), was granted on September 23, 1999. The specific issues to be resolved, as identified by the parties' counsel in a telephone conference with the court, were: "(a) the monthly net income of defendant, (b) the earning capacity of plaintiff, (c) whether plaintiff is entitled to an award of alimony pendente lite in view of her assets, (d) whether defendant is entitled to receive credit for direct payments made by him for support of plaintiff, and (e) if it is determined that there are arrearages, whether they should be paid in one lump sum or in installments."[2]

On January 25, 2000, Husband's motion to compel answers to interrogatories and the production of documents was denied on the ground that Wife's post-separation expenses were not discoverable. The court held that under the 1993 amendments to the support rules, the amount of support, whether it be child support, spousal support, or APL, is to be determined in accordance with the Uniform Support Guidelines. Pa.R.C.P. 1910.16-1(b). Since Wife had stipulated that she had no unusual expenses and was seeking only a guideline amount of APL, her post-separation expenses were not relevant to a determination of her APL claim and were not reasonably calculated to lead to admissible evidence.[3] See

---

2. Special listing order 9/23/99.

3. Discovery in domestic relations matters is governed by the general discovery rules that limit discovery to information that is relevant to the claim or defense of a party or is reasonably calculated to lead to admissible evidence. See Pa.R.C.P. 1930.5(b) and Pa.R.C.P. 4003.1.

*Prud'homme v. Prud'homme,* 48 Lehigh L.J. 797 (2000). Husband's petition for reconsideration and argument en banc was granted in light of the prior unpublished decision of this court in *Haas v. Haas,* Lehigh County CCP no. 97-FC-1394 (June 19, 1998) (Steinberg, J.).

## I. HISTORICAL PERSPECTIVE

Before adoption of the Uniform Support Guidelines, spousal support was determined by considering the reasonable financial needs of the dependent spouse and the reasonable ability of the payor spouse to pay. Relevant factors were the parties' respective earning capacities and property as well as their standard of living during the marriage. *Commonwealth ex rel. Bulson v. Bulson,* 278 Pa. Super. 6, 419 A.2d 1327 (1980). The trial court had broad discretion to determine the amount of support, so long as it did not exceed one-third of the payor spouse's net income. *McGavic v. McGavic,* 222 Pa. Super. 246, 294 A.2d 795 (1972). The court was to take into account the parties' mode of living while they lived together, not the dependent spouse's reduced lifestyle after separation. *Id.*

Similarly, before adoption of the Uniform Support Guidelines, APL was also determined on the basis of the reasonable financial needs of the dependent spouse and the reasonable ability of the payor spouse to pay. The same factors, *i.e.,* the parties' earning capacities and property along with their standard of living during the marriage were to be considered. *DeMasi v. DeMasi,* 366 Pa. Super. 19, 38, 530 A.2d 871, 880 (1987), *appeal denied,* 517 Pa. 631, 539 A.2d 811 (1988); see also, *Orr v. Orr,* 315 Pa. Super. 168, 172, 461 A.2d 850, 852 (1983) ("the husband's ability to pay, the separate estate and

income of the wife, and the character, situation, and surroundings of the parties").

As in the case of spousal support, the trial court had broad discretion to determine the amount of APL, subject to the limitation that it not exceed one-third of the payor spouse's net income. *Wechsler v. Wechsler,* 242 Pa. Super. 356, 363 A.2d 1307 (1976). As in the case of spousal support, the award was to allow the dependent spouse to maintain the same standard of living that she had enjoyed while the parties lived together. *Orr v. Orr, supra.*

With respect to child support, the relevant factors were exhaustively reviewed by the Pennsylvania Supreme Court in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). To arrive at an award of child support, a court first had to determine the needs of the child in view of the station of life of the child's parents. Then the court would determine the respective abilities of the parents to support the child in view of their property, incomes and earning capacities. The formula set forth in *Melzer v. Witsberger* continues to be used to determine child support in those cases where the parties' incomes exceed the levels set forth in the Uniform Support Guidelines.

Thus, prior to the enactment of the Uniform Support Guidelines, all forms of support, whether it be spousal support, APL or child support, required the court to determine the recipient's needs based on the parties' standard of living while they lived together or their station in life, and the payor's ability to pay considering his/her income, property and earning capacity. In 1985 the Pennsylvania Superior Court in *McNulty v. McNulty,* 347 Pa. Super. 363, 500 A.2d 876 (1985) summarized the rela-

tionship between spousal support, APL and alimony as follows:

"[A]ll three are species of support and as such, the relevant considerations in arriving at the amount[s] are those elemental to any support order: duty of the obligor, need of the obligee, and ability to pay on the part of the obligor. . . . The difference in case posture controls the procedure but does not alter the underlying considerations and assessment of the support amount, except for the duration." 347 Pa. Super. at 371-72, 500 A.2d at 880.

In *Remick v. Remick,* 310 Pa. Super, 23, 456 A.2d 163 (1983) (en banc), the Superior Court addressed the duration of APL and spousal support. The court held that APL is to enable the dependent spouse to maintain or defend the principal action in divorce and is intended to cover only the period during which the proceeding may, with due diligence, be prosecuted to conclusion. On the other hand, the duty of spousal support arises out of the marital relationship itself and terminates when the marriage ends. In *Remick,* the wife was awarded concurrent spousal support, APL and counsel fees in order to meet her needs and to enable her to maintain and defend the divorce action. See also, *Commonwealth ex rel. Homsher v. Homsher,* 289 Pa. Super. 112, 432 A.2d 1076 (1981).

On February 12, 1988, the Pennsylvania Divorce Code was amended to allow for the inclusion of a spousal support claim along with an APL claim in a divorce proceeding, and the courts hearing divorce cases were given authority to order interim awards of counsel fees and expenses. 23 Pa.C.S. §3702.

On September 6, 1989, the Pennsylvania Supreme Court promulgated new Rules of Civil Procedure

1910.16-1 to 1910.16-5 inclusive, establishing the Uniform Support Guidelines, effective September 30, 1989. The new rules mandated that spousal support and child support be determined in accordance with these guidelines, unless one or more of the specified bases for deviation from the guidelines applied. APL was not mentioned in these new rules.

On January 27, 1993, the Pennsylvania Supreme Court amended Rule 1910.16-1(a), effective immediately, to provide that support included "child support, spousal support or *alimony pendente lite.*" (emphasis added) The note following this amendment stated that "[o]rders for spousal support and alimony pendente lite shall not be in effect simultaneously."

The purpose of establishing the Uniform Support Guidelines, as set forth in an explanatory comment, is to promote "(1) similar treatment of persons similarly situated, (2) a more equitable distribution of the financial responsibility for raising children, (3) settlement of support matters without court involvement, and (4) more efficient hearings where they are necessary." Explanatory comment to Pa.R.C.P. 1910.16-1.

Significantly, the same explanatory comment states:

"In most cases, however, a party's living expenses are not relevant in determining that party's support obligation. Rather, as the statute requires, the obligation is based upon the reasonable needs of a dependent spouse or child and the reasonable ability of the obligor to pay." *Id.*

In 1994, the Pennsylvania Supreme Court stated in *Ball v. Minnick,* 538 Pa. 441, 448, 648 A.2d 1192, 1195-96 (1994):

"Rule 1910.16-1 explicitly states that the amount of support, *whether it be child support, spousal support or*

*alimony pendente lite,* shall be determined in accordance with the support guidelines which consist of not only the grids set forth in Rule 1910.16-2 and the formula set forth in Rule 1910.16-3, but also Rule 1910.16-5 which discusses in detail the operation of the guidelines. The rules make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support and that any deviation must be based on Rule 1910.16-4. (emphasis added)[4]

The court noted that the legislation authorizing the establishment of support guidelines specifically provides:

"In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline[s] shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention."[5] *Ball,* 538 Pa. at 451, 648 A.2d at 1197.

The court emphasized, in language that is especially relevant here:

"The clear intent of the guidelines, therefore, was to do away with individual, case-by-case determinations of just what constitutes the *reasonable needs and expenses* of the particular parties involved and thus to limit the trial court's discretion. In other words, the trier of fact need not, nor should he or she, consider in the first

---

4. The changes made to the Pennsylvania Rules of Civil Procedure effective April 1, 1999, changed some of the rule numbers referred to in the *Ball* opinion. However, Pa.R.C.P. 1910.16-1(b) still mandates that the amount of APL be determined in accordance with the Uniform Support Guidelines composed of grids and formulas.

5. 23 Pa.C.S §4322.

instance, the actual expenses of the parties in an effort to establish the reasonable needs of a particular child." *Ball,* 538 Pa. at 452, 648 A.2d at 1197 (emphasis in original); see also, *Terpak v. Terpak,* 697 A.2d 1006 (Pa. Super. 1997) (following the same reasoning in a spousal support case).

After the *Ball* opinion the Pennsylvania Supreme Court promulgated two more amendments to the Rules of Civil Procedure relating to support actions in 1994. First, Rule 1910.11(c), was amended to eliminate the requirement that full income and expense statements be filed in every case. This requirement was now limited to those child support cases where the parties' incomes exceed the levels of the Uniform Support Guidelines so that *Melzer v. Witsberger, supra,* applies. Where support is to be determined in accordance with the guideline grids or formula, the income and expense statements need only show income and extraordinary expenses. APL claims were not carved out by the Supreme Court as an exception to the general rule that only extraordinary expenses need be disclosed. See Pa.R.C.P. 1910.11(c), as amended December 2, 1994, effective March 1, 1995.

The second 1994 amendment was the promulgation of Rule 1920.31(d). This new rule provides that where economic claims remain pending following a divorce, any existing spousal support order shall be deemed an order for APL automatically upon the entry of the divorce decree. See Pa.R.C.P. 1920.31(d), promulgated December 2, 1994, effective March 1, 1995.

These two rule changes, coupled with the 1993 amendments to the support rules and the *Ball v. Minnick* mandate by the Pennsylvania Supreme Court, clearly reflect the Supreme Court's intention to have the Uniform Sup-

port Guidelines apply to claims for APL in the same fashion as they apply to claims for spousal support and non-*Melzer* child support. The guidelines are to apply automatically, subject only to deviations for one or more of the reasons specified in Rule 1910.16-5.

Reflecting on these changes, the Pennsylvania Superior Court stated in 1995 that the difference between APL and spousal support is now "negligible." *Calibeo v. Calibeo,* 443 Pa. Super. 694, 698, 663 A.2d 184, 185 (1995); accord, *Leister v. Leister,* 453 Pa. Super. 576, 684 A.2d 192 (1996). In *Calibeo,* after noting the virtual identity of spousal support and APL, the Superior Court affirmed the trial court's application of the Uniform Support Guidelines to an APL claim. The wife in *Calibeo* was awarded 40 percent of the difference between the parties' incomes, in accordance with the guidelines. The court did not require a threshold showing of financial need before applying the guidelines.

Furthermore, in 1997, the Pennsylvania Supreme Court in *Musko v. Musko,* 548 Pa. 378, 697 A.2d 255 (1997), reversed the Superior Court for making a distinction between spousal support and APL, holding that APL is merely a type of support awarded in divorce cases. The Supreme Court noted the definition of APL in the Pennsylvania Divorce Code as "[a]n order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. 23 Pa.C.S. §3103." See *Musko,* 548 Pa. at 380, 697 A.2d at 256.

Finally, the Pennsylvania Supreme Court again amended the Uniform Support Guidelines on December 8, 1998, effective April 1, 1999. As part of these amendments, the 1993 note to Rule 1910.16-1(a) providing that "[o]rders for spousal support and alimony pendente lite

shall not be in effect simultaneously" was established as a rule. See Pa.R.C.P. 1910.16-1(c).

To summarize, spousal support and APL were always based on similar financial criteria, though the procedures and duration differed. As a result of the promulgation of new support rules by the Pennsylvania Supreme Court and the interpretation of these rules by the Pennsylvania Supreme Court and the Pennsylvania Superior Court, many of the historical distinctions between spousal support and APL have been eliminated. APL like spousal support shall be determined in accordance with the Uniform Support Guidelines. APL and spousal support shall not be in effect simultaneously. APL claimants, like spousal support claimants, need not prepare and file detailed income and expense statements. Upon the entry of a decree in divorce, if economic claims are still pending, a spousal support order shall be deemed an order for APL.

## II. HUSBAND'S CONTENTION

Husband acknowledges that the amount of APL is to be determined in accordance with the Uniform Support Guidelines. He contends, however, that before the court applies the guidelines, Wife must first prove financial need under a pre-guideline income/expense analysis.[6] According to Husband, Wife must first establish financial need for at least some amount of support, even if only $1 per month. For example, if the guidelines indicate

---

6. When asked at oral argument how this financial need was to be determined, Husband's counsel referred to the same factors discussed above in the pre-guideline case law, *i.e.,* the financial ability of the payor, the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties. See *Orr v. Orr,* 315 Pa. Super. 168, 461 A.2d 850 (1983).

that based on the respective incomes of the parties the amount of support should be $3,000 per month, and Wife can show that she needs $1 per month, then the guidelines apply, and Husband must pay her $3,000 per month, unless he can establish a basis for deviating from the guidelines.

Husband's argument is contrary to both the letter and spirit of the Uniform Support Guidelines. First, from a linguistic standpoint, Rule 1910.16-1 states very specifically that APL, like spousal support and child support, is to be determined in accordance with the guidelines. If the guidelines establish APL at $3,000 per month and there is no basis for a deviation, then APL is to be awarded in this amount, so long as there is a divorce action being pursued. There is no requirement under the support rules for a separate demonstration of financial need.

Moreover, the philosophy underlying the guidelines is that support is to be income-based, *i.e.,* the reasonable needs of a dependent spouse and the reasonable ability of the obligor to pay are presumed to be the amount arrived at by application of the guidelines to their respective incomes. See Pa.R.C.P. 1910.16-1(d) and explanatory comment-1998, (A) income shares. The purpose of an income-based method applied on a uniform basis is to increase the fairness of support orders by providing "similar treatment of persons similarly situated."[7] The use of the guidelines also increases the predictability of support matters, thus encouraging settlement without court involvement and leading to more efficient hearings where they are necessary.

---

7. Explanatory comment to Pa.R.C.P. 1910.16-1.

Husband's contention, if adopted, would return us to the pre-guideline days when subjective judgments were made as to "need." This would reintroduce uncertainty into a process that is intended to be uniform and predictable.

The fact that full expense statements are no longer required for APL as well as for spousal support is a clear indication that the Supreme Court does not desire a return to the pre-guideline expense reviews, except for those cases where unusual expenses are claimed as the basis for a deviation from the guidelines or in child support cases where *Melzer v. Witsberger, supra,* applies. If every APL case required a preliminary determination of financial need, full expense statements would be needed in every case. The Supreme Court's elimination of this requirement for APL cases is clear evidence that a pre-guideline expense analysis is not required as a precondition for an award of APL.

Further, one of the purposes of the guidelines is to make support hearings more efficient since the hearing officer need only apply the guidelines to the parties' net monthly incomes in order to determine the presumptive amount of support. Husband's approach, if adopted, would increase the work of the hearing officers considerably in APL cases because it would require an initial determination of financial need, using the pre-guideline mode of expense analysis, before applying the guidelines to the parties' net monthly incomes. Rule 1910.16-1 requires just the opposite: the guidelines are to be applied first to determine the presumptive amount of support; and then, if a deviation is sought from the guidelines, an expense analysis may be appropriate.

## III. APL VERSUS SPOUSAL SUPPORT

It is clear from the case law and the procedural rules as they have evolved, that both APL and spousal support are species of support. As noted in *Calibeo* the differences between the two are now "negligible." From a financial standpoint, these two species of support are identical. Those differences that remain pertain only to the duration of the obligation and the effect of marital misconduct.

APL is available only while a divorce action is pending; whereas spousal support is available only to a spouse. Thus, if two parties are married but no divorce action is pending, the dependent spouse may seek only spousal support. If the parties are divorced, but the divorce action is still pending for disposition of economic claims, the dependent spouse is no longer entitled to spousal support, but *is* entitled to APL. Indeed, under the most recent amendment to Rule 1920.31(d), any existing spousal support order automatically converts to an order for APL upon the entry of a divorce decree, where economic claims are still pending.

The second difference between spousal support and APL is the effect of marital misconduct by the dependent spouse. A spouse who is guilty of marital misconduct forfeits his/her claim to spousal support. However, such a spouse is still eligible for APL. See *Hanson v. Hanson,* 177 Pa. Super. 384, 110 A.2d 750 (1955).

These differences between APL and spousal support are the reason for the 1994 explanatory comment to Rule 1910.1, which states:

"Nothing in this rule should be interpreted to eliminate the distinctions between spousal support and alimony pendente lite which are established by case law."

These distinctions, as we have seen, relate to the duration of the obligation and the effect of marital misconduct. From an economic standpoint, the guidelines and the case law do not distinguish between the two.

*Moore v. Moore,* 56 Som. L.J. 110 (1999), on which Husband relies, is based upon pre-guideline appellate cases holding that the financial need of the dependent spouse must be considered in awarding APL. The Somerset County Court concludes from this that there must be a preliminary determination of financial need before the guidelines are applied. However, this conclusion overlooks the fact that the very same appellate courts in pre-guideline *spousal support* cases also required proof of financial need by the dependent spouse. It is not plausible that adoption of the guidelines changed the financial rules for spousal support, but not for APL with respect to proof of financial need. We find more persuasive the statement in *Calibeo, supra,* that the differences between spousal support and APL are now "negligible."

To summarize, the differences between spousal support and APL relate to non-financial issues such as the duration of payments and the effect of marital misconduct. With respect to the issue of financial need, this is presumed to be the guideline amount for APL as well as spousal support.

The validity of our conclusion is evident from the rule that upon the entry of a divorce decree, spousal support (which ends with the divorce decree) is automatically converted to APL if economic claims remain pending. An automatic conversion would be inappropriate if a spouse's entitlement to APL had additional financial conditions over and above the financial conditions for an award of spousal support. Significantly, the rules do

not provide for the converse: upon termination of a divorce action without the entry of a decree, an APL order does not convert automatically into an order for spousal support. Such an automatic conversion would be improper since there is an entitlement issue, *i.e.,* marital misconduct, that may preclude spousal support.

Because of the difference in the effect of marital misconduct in spousal support and APL cases, Husband argues that there will be an explosion in the number of APL cases if we do not require an expense analysis to show financial need in APL cases. Husband suggests that spouses who are not entitled to spousal support because of marital misconduct will file divorce actions, claim APL, and then delay the prosecution of these cases. We believe that Husband's prophecy of a flood of litigation is far-fetched. There is a clear remedy for an obligor if the dependent spouse delays the prosecution of the action while benefiting from an award of APL. In such a situation, the obligor can move for the appointment of a master; or if the obligor cannot or does not wish to do so, the obligor can move to dismiss the divorce action or to terminate the APL order for lack of prosecution. There is no need to invoke an expense analysis to remedy the problem of the APL obligee who refuses to proceed in the litigation. Indeed, since most dependent spouses will have no difficulty in establishing $1 of financial need—in which case the guidelines would apply even under Husband's analysis—Husband's position, even if adopted by this court, would do little to affect potential APL abuse.

## IV. THE OLD PROCEDURE VERSUS
## THE NEW PROCEDURE

Before adoption of the guidelines in 1993, all species of support—spousal support, APL and child support—were determined by an analysis of the incomes and expenses of both parties, their separate assets, and their standard of living during the marriage. *McNulty v. McNulty, supra.* This analysis left room for a great deal of discretion, resulting in uneven results from case to case and from court to court. The requirement of an expense analysis also involved a review of expense statements submitted by the parties, statements that sometimes were rather creative.

Under the Uniform Support Guidelines the same factors are still taken into account. What is different is the procedure to be followed by the hearing officer or the court in reaching a decision. First, the net monthly income of each party is computed, as before. Next, a calculation is made to determine the presumptive amount of support, based on the guidelines set forth in Rule 1910.16-4. Finally, the presumptive amount of support may be modified if any of the factors found in Rule 1910.16-5 justifying a deviation from the guidelines are established. These factors include, inter alia, any unusual expenses of the parties.

Thus, under the pre-1993 procedure, a number of factors were reviewed in no particular order and a discretionary decision handed down. Under the current rules the same factors are considered, but in a more structured way. This more structured approach makes it more likely that similar situations will yield similar results, that decisions will be more predictable, and that meaningful

review is possible. Under the new procedure, instead of requiring a detailed expense analysis in each case, the parties' reasonable needs are presumed from their respective incomes, with deviations permitted only for those special circumstances set forth in Rule 1910.16-5.

Husband's effort to turn the clock back so that hearing officers and judges would at the outset have to undertake detailed expense analyses in APL cases is not supported by the language of the rules, would undermine the purpose of the rules, and from an administrative standpoint would be an unsound policy. The guideline procedure simplifies the determination of APL and spousal support claims; Husband's proposal would complicate the procedure. The guidelines provide a method for achieving similar results in similar circumstances; Husband's proposal would return us to the days of broad discretion in every case. The guidelines provide a measure of predictability leading to settlements and efficient hearings; Husband would interpose an expense statement procedure that would lead to more litigation and expense in APL cases.

This is not to say that the reasonable needs of the parties are ignored. Consideration of this factor is built into the guidelines, which are presumed to be accurate. There is no reason for a preliminary determination of financial need since the guidelines take this factor into account.

## V. CONCLUSION

For the reasons stated, we hold that a dependent spouse seeking APL is not required to establish financial need through an expense analysis so long as he or she is seeking only a guideline amount of support. The dependent spouse's post-separation living expenses are not relevant

unless there is a claim for deviation from the guidelines because of unusual expenses. Since no such claim is made here, discovery of Wife's post-separation living expenses is not permissible.

## ORDER

Now, September 28, 2000, after re-argument before an en banc panel of this court on defendant's motion to compel answers to interrogatories and request for production of documents, for the reasons set forth in the accompanying opinion, it is ordered that said motion be and hereby is denied.