J. A15020/16

2016 PA Super 255

MICHAEL HANRAHAN,           :    IN THE SUPERIOR COURT OF
            Appellant       :         PENNSYLVANIA
        v.                  :
                            :
JEANNE BAKKER               :
                            :
                            :      No. 1638 EDA 2015
                            :


MICHAEL J. HANRAHAN         :    IN THE SUPERIOR COURT OF
                            :         PENNSYLVANIA
        v.                  :
                            :
JEANNE L. BAKKER,           :
            Appellant       :
                            :      No. 1702 EDA 2015
                            :


Appeal from the Order Entered June 4, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2008-16689

BEFORE: FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

OPINION BY DUBOW, J.:                    **FILED NOVEMBER 18, 2016**

Michael Hanrahan ("Father") and Jeanne Bakker ("Mother") both appeal from the Order dated June 1, 2014, and entered June 4, 2014, in the Court of Common Pleas of Delaware County that granted Motions for Reconsideration filed by both parties and amended the May 6, 2015 child support Order.

Upon careful review, we affirm in part and reverse in part. In particular, we reverse the trial court's Order as it pertains to: (i) requiring a

portion of the child support obligation to be placed in a Pennsylvania Uniform Transfers to Minor's Act[1] ("PUTMA") account; (ii) evaluating Pa.R.C.P 1910.16.5(b)(7) based on the children's potential standard of living post-minority; (iii) determining a $2,500,000 downward deviation in Support Year 2013 because of Father's voluntary contribution to a trust for his children; and (iv) denying Mother's request for attorney's fees. We remand to the trial court to enter an Order in compliance with this Opinion.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts and procedural history of this case are as follows. Father and Mother, both attorneys, were married on November 14, 1992 and divorced on July 9, 2009. They are the parents of two minor children and share joint legal and physical custody of the children on an alternating weekly basis. On April 9, 2009, Father and Mother entered into a Property Settlement Agreement ("Agreement") which was incorporated into their July 9, 2009 Divorce Decree.

The Agreement stated the following, in relevant part, concerning the parties' child support obligations:

> The parties agree to exchange tax information for each tax year by no later than April 15 of the year following the tax year. Child support and the proportion of Child Expenses shall be recalculated each year as of May 1 based on the parties' respective net incomes and Pennsylvania guidelines, provided, however, either party may apply to the Court to adjust child support and /or their share of Child Expenses for the year based

---

[1] 20 Pa.C.S. §§ 5301-5321.

on relevant factors. As to each child, child support shall continue until Emancipation.

Property Settlement Agreement at 13.

In addition, the Agreement stated the following, in relevant part, concerning attorney's fees:

Each party further hereby agreed to pay and to save and hold harmless the other party from any and all attorney's fees, and costs of litigation that either may sustain, or incur or become liable for, in any way whatsoever, or shall pay upon, or in consequence of any default or breach by the other of any of the terms or provisions of this Agreement by reason of which either party shall be obliged to retain or engage counsel to initiate or maintain or defend proceedings against the other at law or equity or both or in any way whatsoever; provided that either party (or both parties) who seeks to recover such attorney's fees, and costs of litigation will only recover attorney's fees and costs of litigation to the extent that party is successful. It is the specific agreement and intent of the parties that a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party to the extent the other party is successful in enforcing his or her rights under this Agreement.

Property Settlement Agreement at 19.

In 2009, Father's income was $4,010,938 and Mother's income was $183,635. Father complied with the terms of the Agreement and paid Mother a monthly child support obligation of $15,878 per month from May 1, 2010 through April 30, 2011.

In 2010, Father's income was $1,083,312 and Mother's income was $138,988. Father complied with the terms of the Agreement and paid Mother a monthly child support obligation of $3,702 per month from May 1, 2011 through April 30, 2012.

In 2011, Father's income was $2,303,031 and Mother's income was $145,593. Father complied with the terms of the Agreement and paid Mother a monthly child support obligation of $7,851 per month from May 1, 2012 through April 30, 2013.

In 2012, Father's income was $15,591,840 and Mother's income was $105,201. Father disagreed with the terms of the Agreement and on March 6, 2013, wrote Mother a letter stating:

> As we discussed, I was fortunate enough to make a substantial amount of money last year. Based on this income, the preliminary calculation that is the first step in the child support determination in high income cases will yield a result that is way beyond any realistic estimate of the reasonable needs of the children. In the past, you and your counsel have insisted on using the preliminary calculation as if it were a definitive determination of the amount of child support. Though I considered the amounts excessive, I acquiesced to avoid conflict. However, I simply cannot agree that the reasonable needs of two children could be anywhere close to the preliminary calculation amount this year.

Letter from Father to Mother dated 3/6/13. While Father disagreed with a new child support calculation, he agreed to continue to pay the $7,851 of child support per month that he paid the previous support year. (N.T. 1/27/15, p. 216).

Additionally in 2012, Father deposited $2,500,000 into an irrevocable non-grantor trust for the benefit of the two children. He also paid approximately $70,000, in addition to monthly child support monies, towards the children's private school tuition, camps, and activities. (N.T. 1/27/15, pp. 119, 142-43, 268-70). Further, "in 2012, [Father's] law firm

distributed income to him, as a partner, and it was agreed that he, and the other partners, would individually make contributions in the amount of $150,000 and he did contribute that amount, to establish scholarships in honor of William Prichett, who was the founder of the firm . . . [and] his income was increased by $150,000 because of the contribution that was going to be made." Amended Order, 6/1/15, at 8-9.

On December 20, 2013, Mother filed a Petition for Enforcement of Property Settlement Agreement and of Divorce Decree of July 9, 2009 ("Mother's Petition"). On February 4, 2014, Father filed a Counterclaim to Mother's Petition. Both parties continued to file timely answers, replies, counterclaims, and new matter pertaining to Mother's Petition.

On September 23, 2014, Mother filed a Motion in Limine for Exclusion of Expert Testimony Regarding the Applicability of Pennsylvania Child Support Guidelines. On October 28, 2014, the trial court granted Mother's motion and precluded Father from introducing expert testimony regarding the applicability of the Pennsylvania Child Support Guidelines ("Guidelines").

On January 27, 2015, the trial court held a hearing on Mother's Petition at which both Father and Mother testified. On May 6, 2015, the trial court issued an Order including Findings of Fact and Conclusions of Law. Both parties filed Motions for Reconsideration, which the trial court granted.

On June 1, 2015, the trial court issued an Amended Order which directed, in relevant part: (1) Father to pay Mother a total of $52,289 per

month in child support for the period of 5/1/13 to 8/8/13 and a total of $59,206 per month in child support for the period of 8/9/13 to 4/30/14;[2] (2) Mother to set up a separate PUTMA account for the benefit of each child and name herself custodian; and 3) Mother to deposit $30,000 per month of the child support monies received for each month for the period of 5/1/13 to 4/30/14 into the PUTMA accounts. *See* Amended Order, dated June 1, 2015, at 25-27.

Father and Mother both filed a timely Notice of Appeal. Father, Mother, and the trial court all complied with Pa.R.A.P. 1925.

## <u>MOTHER'S ISSUES ON APPEAL</u>

1. Whether the trial court erred and/or abused its discretion by requiring [Mother] to set up a separate [P]UTMA account for the benefit of each child naming herself as custodian of the accounts and ordering [Father] to direct her to deposit $30,000 per month of the child support monies for the period May 1, 2013 to April 30, 2014 into the [P]UTMA accounts.

2. Whether the trial court erred and/or abused its discretion by: determining that [Father] was entitled to a downward deviation for support purposes as a result of his voluntary contributions to a trust for the benefit of the children in the amount of $2,500,000 in support year 2012; concluding that such voluntary contribution was a "relevant and appropriate" factor under Pa.R.C.P. 1910.16-5(b)(9); and, failing to explain how the deviation amount was determined.

---

[2] Father was instructed to deduct the $7,951 per month that he had already paid Mother for a net child support amount of $44,438 per month for the period of 5/1/13 to 8/8/13 and $51,355 per month for the period of 8/9/13 to 4/30/14.

3. Whether the trial court erred and/or abused its discretion in denying [Mother] reimbursement of counsel fees pursuant to paragraph 35.e of the Property Settlement Agreement.

Mother's Reply and Brief at 2.

## FATHER'S ISSUES ON APPEAL

1. Whether the trial court erred as a matter of law in holding that[:]

   (a) the Pennsylvania Supreme Court, through Pa.R.C.P. 1910.16-3.1 and Ball v. Minnick, 648 A.2d 1192 (Pa. 1994), eliminated the statutory requirement of §4322(a) that high income child support awards be based on the reasonable needs of the children[;] and

   (b) that reasonable needs is no longer the governing standard for, or even a relevant factor in, determining high income child support under the three-step process of Pa.R.C.P. 1910.16-3.1(a) and the factors in Rule 1910.16 -5(b)?

2. Did the trial court err as a matter of law in interpreting and applying Factors 7 and 9 of Pa.R.C.P. 1910.16-5 by:

   (a) failing to consider reasonable needs;

   (b) failing to consider the mandatory expense statements of Pa.R.C.P. 1910.27(c)(2)(B) in applying the Rule 1910.16-5(b) factors, as Pa.R.C.P. 1910.16-3.1(a)(3) specifically requires;

   (c) requiring Father to provide [Mother] with a "potentially comparable level of funds" to support the "potential" extravagant lifestyle Father could have lived on his 2012 net income, rather than the high but consistent standard of living the parties and the children have maintained;

   (d) awarding as child support for the 2013 Support Year amounts for maintaining the standard of living for Mother in subsequent support years and the future standard of living of the children post-minority, including ordering Father to pay an additional $360,000 that Mother was

ordered to place in separate Pennsylvania Uniform Transfer to Minors Act ("[P]UTMA") accounts for [children]; and

(e) requiring Father to pay child support on funds that went elsewhere, including Father's payment of $70,000 for the children's tuition, camps and other activities, Mother's withdrawal of funds from her 401(K), and Father's mandatory charitable contributions pursuant to an agreement with his law firm?

3. Did the trial court err as a matter of law by automatically raising child support on combined monthly net income ( "CMNI ") above $30,000 from 8% to 11.6% (an increase of 45 %) based on a change in the formula in Rule 1910.16 - 3.1(a)(1) effective August 9, 2013 without placing the burden on Mother to prove such an adjustment was required by the relevant factors, without determining whether the adjustment was consistent with the terms of the parties' Agreement, without considering the reasonable needs of the children, and without determining whether the resulting award was just and appropriate?

4. Was it legal error for the trial court to deny Father the opportunity to present evidence and argument by:

(a) refusing to permit expert testimony concerning whether the preliminary analysis under Pa.R.C.P. 1910.16 - 3.1(a)(1) would be inconsistent with the Income Shares Model and economic data underlying the Pennsylvania child support guidelines; and

(b) denying Father the joint custody reduction for the period from May 1 to August 9, 2013?

Father's Brief at 4-6.

## LEGAL ANALYSIS

### Mother's Issues

### PUTMA

Mother first argues that the trial court erred and/or abused its discretion when it required her to set up a separate PUTMA account for the benefit of each child and ordered her to deposit $30,000 per month of the child support monies she received each month for the period of May 1, 2013 to April 30, 2014 into the PUTMA accounts. Mother's Reply and Brief at 2. We agree.

The standard of review in child support cases is well settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Arbet v. Arbet*, 863 A.2d 34, 39 (Pa. Super. 2004) (citation omitted).

"The purpose of PUTMA is to provide an inexpensive, easy way for giving property to minors." *Sternlicht v. Sternlicht*, 822 A.2d 732, 737 (Pa. Super. 2003); *aff'd*, 583 Pa. 149, 876 A.2d 904 (Pa. 2005). Under PUTMA, a transfer is made and "custodial property" is created when money is deposited into a brokerage account in the name of the parent as custodian

for the minor. *Id.;* 20 Pa.C.S. § 5309(a)(2). Regardless of the source, custodial property that is held pursuant to PUTMA is the property of the minor child. *Sternlicht,* 822 A.2d at 737. "[A] transfer made into the PUTMA account of the minor is irrevocable and the vesting of the custodial property in the minor cannot be undone." *Id.,* at 737; 20 Pa.C.S. §5311(b).

PUTMA provides: "[a] custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor . . ." 20 Pa.C.S. § 5314(a). However, "[a] delivery, payment or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor." 20 Pa.C.S. § 5314(c). Child support, on the other hand, should be "based on the . . . recognition that **children should not be made to wait for support** and parents should not be permitted to defer income to which they are entitled until they choose to avail themselves of it." *MacKinley v. Messerschmidt*, 814 A.2d 680, 683 (Pa. Super. 2002) (emphasis added). This Court has held that "[a] custodian abuses his discretion and acts improperly if he expends funds from a PUTMA account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets, where the parent has sufficient financial means to discharge it himself." *Sternlicht,* 822 A.2d at 741. In essence, "PUTMA accounts may not be used for support before the parents expend their own resources." *Id.* This principle applies "not

just to non-custodial support obligors, but to both parents, without regard to marital or custodial status." *In re Gumpher*, 840 A.2d 318, 324 (Pa. Super. 2003).

In justifying its ruling in the instant case, the trial court stated that, "to simply give [Mother] the child support monies for the 2013 Support year in a lump sum, is contrary to the goal in child support matters, which is to serve the best interests of the children and would deprive the children of a fund to guarantee maintenance of their lifestyle in the future when [Father]'s income may be less or non-existent." Trial Court Opinion, dated 12/14/15, at 13. This is a flawed rationale.[3]

As Mother correctly observes, if the child support monies were placed in a PUTMA account, "[she] would be forced to spend down her personal assets before she would be permitted to access the funds," and the funds, likewise, would not be available for the children's immediate needs. Mother's Reply and Brief at 34. She also observes that the "trial court's

---

[3] In the instant case, the trial court erroneously relies on *Branch v. Jackson*, 629 A.2d 170 (Pa. Super. 1993), as authority in support of its order that a portion of child support monies be placed into a PUTMA account. The trial court incorrectly stated that, in *Branch*, this Court "required Father to establish and pay the monthly amount for child support, $3,000.00 per month, into a trust for the child for future expenses." Trial Ct. Op. at 26. In fact, this Court never reached the issue. Rather, we vacated and remanded for development of the record. Thus, contrary to the trial court's Opinion, *Branch* does not stand for the proposition that a trial court has discretion to order a parent to place a portion of child support monies into a trust for future use.

decision singles Mother out as the only Pennsylvania support recipient who is not entitled to free and unfettered access to the child support awarded to her which is contrary to Pennsylvania law and contrary to the Pennsylvania Legislature's mandate that child support in this Commonwealth shall be awarded so that 'persons similarly situated shall be treated similarly.'" Mother's Brief at 39. We agree.

As noted above, any child support monies awarded under the Guidelines should be immediately available for the children's needs. Accordingly, the trial court's Order that requires Mother to place a portion of child support payments in a PUTMA is an abuse of discretion and we reverse this portion of the trial court's Order. ***See MacKinley, supra.***

**DOWNWARD DEVIATION**

Mother next avers that the trial court abused its discretion by determining that Father's voluntary contributions to a trust entitled him to a downward deviation for support purposes. Mother's Reply and Brief at 2. We agree.

The Guidelines direct that "[w]hen the parties' combined monthly net income is above $30,000, [a] three-step process shall be applied to calculate the parties' respective child support obligations." Pa.R.C.P. 1910.16-3.1. The three-step process involves: (1) implementation of the child support formula prescribed in the section; (2) applicable adjustments for shared custody and allocations of additional expenses; and (3) consideration of

additional factors to determine whether a downward or upward deviation is appropriate. ***Id.***

The factors that a trial court should consider when determining whether a deviation is appropriate include, in relevant part:

    (1) unusual needs and unusual fixed obligations;
    (2) other support obligations of the parties;
    (3) other income in the household;
    (4) ages of the children;
    (5) the relative assets and liabilities of the parties;
    (6) medical expenses not covered by insurance;
    (7) standard of living of the parties and their children;

    * * *
    (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-3.1(a)(3); Pa.R.C.P. 1910.16-5. Further, "a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." ***Silver v. Pinskey***, 981 A.2d 284, 296 (Pa. Super. 2009).

In the instant case, the trial court determined that Father "was entitled to a downward deviation for support purposes as a result of his voluntary contributions to a trust for the benefit of the children in the amount of $2,500,000 in support year 2012 and conclude[ed] that such voluntary contribution was a 'relevant and appropriate' factor under Pa.R.C.P. 1910.16-5(b)(9)." Trial Ct. Op. at 35. Thus, we must determine whether a "voluntary contribution to a trust" is a "relevant and appropriate factor" to consider when deciding to deviate downward.

Pa.R.C.P. 1910.16-5 provides a myriad of valid and appropriate reasons to deviate from the child support formula in high-income cases. As discussed below, a voluntary contribution to a trust is not one of them.

Our Supreme Court has held that "a parent's obligation to support minor children is independent of the minor's assets." *Sutliff v. Sutliff*, 528 A.2d 1318, 1320 (Pa. 1987). Further, to the extent that a parent can "reasonably" do so, a parent is obligated to provide support for a child regardless of the child's property. *Id.*

In an analogous case, this Court found that father's voluntary contributions to his 401(k) still constituted income for support purposes, and the trial court could not reduce his child support obligation because of those voluntary contributions. *Portugal v. Portugal*, 798 A.2d 246, 252 (Pa. Super. 2002). In *MacKinley*, *supra*, this Court explained that *Portugal* was decided "based on the dominant interest of the children's immediate needs, as well as the recognition that children should not be made to wait for support and parents should not be permitted to defer income to which they are entitled until they choose to avail themselves of it." *MacKinley*, *supra* at 683.

Here, the trial court should not have considered the children's assets, namely the $2,500,000 trust fund that Father set up for them, when determining Father's child support obligations and deviations. *See Sutliff, supra.* Similarly, it was improper for the trial court to reduce Father's child

support obligation because of those voluntary contributions. **_See Portugal, supra._** Lastly, in determining the appropriate support amount, the trial court's primary focus should have been the children's immediate needs. Ordering a downward deviation of Father's present child support obligation because he put money for future use into a trust for the children is in direct opposition to this principle. **_See MacKinley, supra._** Accordingly, we conclude the trial court abused its discretion when it deviated downward from the child support formula based on Father's voluntary contributions to a trust fund for the children.

## ATTORNEY'S FEES

In her third issue, Mother avers that the trial court abused its discretion by denying Mother's reimbursement of counsel fees. We agree.

The parties entered into an Agreement that required Father to pay child support to Mother in an amount determined by the Guidelines. **_See_** Property Settlement Agreement at 13. Regarding attorney's fee, the Agreement provides, in relevant part, that:

> [i]t is the specific agreement and intent of the parties that a breaching or wrongdoing party shall bear the burden and obligation of any and all costs and expenses and counsel fees incurred by himself or herself as well as the other party to the extent the other party is successful in enforcing his or her rights under this Agreement.

Property Settlement Agreement at 19.

As Mother states, "[t]he parties do not dispute their contract's validity or existence. Nor is it disputed that Mother incurred damages, via attorney's

fees and attendant costs, in prosecuting this action. Rather, the issue turns squarely on whether Father breached the agreement." Mother's Reply and Brief at 55.

In Pennsylvania, post-nuptial agreements are contracts governed by contract law. *Lugg v. Lugg*, 64 A.3d 1109, 1112 (Pa. Super. 2013). "In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding . . . counsel fees or expenses shall not be subject to modification by the court." 23 Pa.C.S. § 3105(c).

In the instant case, the trial court determined that:

> neither [Father], nor [Mother] were "successful" in this litigation, as required for an award of counsel fees as stated in paragraph 36.e. of the [Agreement]. The [trial court] concludes that while not agreeing to the methodology used to calculate his child support obligation, Michael Hanrahan continued to pay substantial monthly child support to Jeanne Bakker for the support year, May 1, 2013 to April 30, 2014. The [trial court] concludes that portions of both of the parties' arguments were flawed and thus, neither Michael Hanrahan, nor Jeanne Bakker, is entitled to an award of Counsel Fees in this matter.

Trial Ct. Op. at 38. We disagree.

The Agreement required Father to pay Mother child support according to the Guidelines. Father complied with the Agreement and paid support accordingly for three years, and each year the parties recalculated the amount of support according to the Guidelines. After Father earned $15,000,000 in 2012, he informed Mother via letter that he no longer agreed to pay child support according to the Guidelines. Accordingly, Father was the "breaching or wrongdoing party." Agreement, *supra* at 19.

The Agreement states that the "breaching or wrongdoing party . . . shall bear the burden of counsel fees . . . to the extent the other party is successful in enforcing his or her rights." The trial court denied counsel fees because both parties had "flawed arguments." Based on the plain language of the Agreement, this is an improper reason to deny Mother's reimbursement of counsel fees.

Simply put, Mother sought enforcement of the Agreement, which stated that the Pennsylvania Guidelines should determine support. The trial court awarded Mother support in accordance with the Pennsylvania Guidelines. Mother was "successful in enforcing . . . her rights" under the Agreement and is entitled to an award of counsel fees. Accordingly, the trial court abused its discretion by denying Mother's reimbursement of counsel fees.

**Father's Issues**

**REASONABLE NEEDS**

Father first argues that the trial court erred as a matter of law in concluding that (a) the Pennsylvania Supreme Court, through Pa.R.C.P. 1910.16-3.1 and **Ball v. Minnick**, 648 A.2d 1192 (Pa. 1994), eliminated the statutory requirement of 23 Pa.C.S. § 4322(a) that high income child support awards be based on the reasonable needs of the children; and (b) reasonable needs is no longer the governing standard for, or even a relevant factor in, determining high income child support under the three-step

process of Pa.R.C.P. 1910.16-3.1(a) and the factors in Rule 1910.16-5(b). Father's Brief at 4. We disagree with Father's contention.

Prior to the adoption of the Guidelines, ***Melzer v. Witsberger*** guided Pennsylvania child support decisions. ***Melzer v. Witsberger***, 480 A.2d 991 (Pa. 1984). ***Melzer*** dictated that courts determine child support based on the parties' net income available for support, the parties' reasonable living expenses, and the reasonable needs of the children. ***Melzer, supra*** at 995-997.

In 1985, the Pennsylvania Legislature mandated the creation of child support guidelines:

**§ 4322. Support guideline**

**(a) Statewide guideline.--**Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

**(b) Rebuttable presumption.--**There shall be a rebuttable presumption, in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded. A written finding or specific finding on the record that the application of the guideline would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria

established by the Supreme Court by general rule within one year of the effective date of this act.

23 Pa.C.S. § 4322.

On September 6, 1989, the Supreme Court adopted Pa.R.C.P. 1910.16 *et. seq.,* providing uniform statewide support guidelines based on "The Income Shares Model." Pa.R.C.P. 1910.16-1 cmt. The Income Shares Model "is based upon the concept that the child of separated, divorced or never-married parents should receive the same proportion of parental income that she or he would have received if the parents lived together." *Id.* As directed by Section 4322, the Guidelines inherently consider reasonable needs, but the Guidelines do not require the trial court to do a separate reasonable needs analysis. *See* 42 Pa.C.S. § 4322; *see also* Pa.R.C.P. 1910.16-3.1.

In 1994, the Pennsylvania Supreme Court held that the "*Melzer* formula applies *only* where the parties' combined income exceeds the amount of the guideline income figures." *Ball v. Minnick*, 648 A.2d 1192, 1195 (Pa. 1994). In all other cases, the amount of child support "shall be determined in accordance with the support guidelines." *Id.* The Court also held that deviating from the Guidelines because the "basic needs of the children could be met by a payment of less than the guideline amount . . . is an impermissible basis for deviating from the guidelines." *Id.* at 1196.

In 2010, our Supreme Court adopted substantial amendments to the Guidelines, including the addition of Pa.R.C.P. 1910.16-3.1, pertaining to

support guidelines for high-income cases. The Explanatory Comment to the Rule specifically states: "[n]ew Rule 1910.16-3.1 is intended to bring all child support cases under the guidelines and treat similarly situated parties similarly. Thus, high income child support cases no longer will be decided pursuant to **Melzer v. Witsberger**, 505 Pa. 462, 480 A.2d 991 (1984)." Pa.R.C.P. 1910.16-3.1 cmt. Accordingly, contrary to Father's contention, the 2010 amendments mandated that **all** child support cases be decided pursuant to the Guidelines.

As discussed above, the Guidelines direct that "[w]hen the parties' combined monthly net income is above $30,000, [a] three-step process shall be applied to calculate the parties' respective child support obligations." Pa.R.C.P. 1910.16-3.1. The three-step process involves: (1) implementation of the child support formula prescribed in the section; (2) applicable adjustments for shared custody and allocations of additional expenses; and (3) consideration of additional factors to determine whether a downward or upward deviation is appropriate. **Id.**

Father argues, without citation to case law, that "[the] replacement of the complicated **Melzer** analysis with the three[-]step process of Rule 1910.16-3.1 did not eliminate the reasonable needs limitation on child support." Father's Brief at 19. He avers that Section 4322 dictates that the trial court must consider a child's reasonable needs when determining an appropriate support award.

Section 4322 directs that the Guidelines "shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support." 23 Pa.C.S. § 4322(a). Further, "[i]n determining the reasonable needs . . . the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations." **Id.** Section 4322 expressly states that the reasonable needs of the child should be based on the net incomes and earning capacities of the parties and that there is a "rebuttable presumption . . . that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded[.]" 23 Pa.C.S. § 4322(b).

In turn, the Guidelines require the trial court to do a three-step analysis. **See** Pa.R.C.P. 1910.16-3.1. In the last step, the trial court is consider a list of factors to determine whether an upward or downward deviation in the child support is appropriate. **See** Pa.R.C.P. 1910.16-5(b). The factors include, in relevant part:

> (1) unusual needs and unusual fixed obligations;
> (2) other support obligations of the parties;
> (3) other income in the household;
> (4) ages of the children;
> (5) the relative assets and liabilities of the parties;
> (6) medical expenses not covered by insurance;
> (7) standard of living of the parties and their children;
>
> * * *
> (9) other relevant and appropriate factors, including the best interests of the child or children.

*Id.* Notably, "reasonable needs" is **not** one of the specific factors listed.

Pennsylvania Courts have previously rejected Father's argument. In ***Ball***, ***supra***, our Supreme Court considered a challenge to a child support award granted pursuant to the basic income Guidelines. The Court determined that deviating from the Guidelines because the "basic needs of the children could be met by a payment of less than the guideline amount . . . is an impermissible basis for deviating from the guidelines." ***Ball, supra*** at 1196.

In ***Arbet v. Arbet***, ***supra***, the father asserted that the court should have considered the children's reasonable needs rather than apply the Guidelines. After explaining the proper application of the Guidelines, this Court disagreed, observing:

> Father's argument essentially encompasses what has been termed a *Melzer* analysis…Although Father argues that the court should have considered the children's reasonable needs and the parties' resources and living expenses, he provides no citations to case law to support this argument. The rules make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support[.]

*Id*., 863 A.2d at 42 (internal quotation and citation omitted).

As a result of the 2010 Guideline amendments, both ***Ball*** and ***Arbet*** are applicable in the instant high income case.

Accordingly, we find that the trial court did not err or abuse its discretion in fashioning a child support award based on the Guidelines

without engaging in a separate and discrete analysis of the children's reasonable needs.

**MISAPPLICATION OF FACTORS 7 AND 9**

Father next avers that the trial court erred as a matter of law in interpreting and applying Factors 7 and 9 of Pa.R.C.P. 1910.16-5(b). Factor 7 is "standard of living of the parties and their children[.]" Pa.R.C.P. 1910.16-5(b)(7). Factor 9 is "other relevant and appropriate factors, including the best interests of the child or children." Pa.R.C.P. 1910.16-5(b)(9).

Father's first and second claims of error pertain to the trial court's failure to consider the children's reasonable needs. As discussed above, we find no error in the trial court's failure to engage in a separate reasonable needs analysis in calculating the child support award.

Father next argues that the trial court misapplied the Guidelines' standard of living factor and erred in justifying its child support directives based on a future standard of living for Mother and children post-minority. *See* Father's Brief at 5. We agree.

Here, the trial court concluded:

[I]n order to insure that the consistency in standard of living is maintained, a fund needs to be established so that [Mother] has the ability that [Father] has to keep up with the life style for the children that they enjoy when in [Father]'s household. To simply give [Mother] the child support monies for the 2013 Support year in a lump sum, is contrary to the goal in child support matters, which is to serve the best interests of the children and would deprive the children of a fund to guarantee maintenance

> of their lifestyle **in the future** when [Father]'s income may be less or non-existent.
>
> The [c]ourt further concludes that deviation upward or downward based on this factor would be inappropriate. The reason this [c]ourt does not further deviate the support Order downward is the fact that perhaps not having access to the money in 2013 prevented [Mother] from applying this amount to the children in a way that would insure her ability (**and their ability post minority**) to maintain a consistent standard of living. It is for that reason that these funds in an amount that the [c]ourt could have deviated downward will be **preserved** for the benefit of the children and accessible by [Mother] as their custodian and natural guardian.

Amended Order, dated 6/1/15, at 23-24 (emphasis added).

Contrary to the trial court's Opinion, Rule 1910.16-5(b)(7) requires the trial court to consider the "standard of living of the parties and their children," not the **potential** standard of living "post minority." *See* Pa.R.C.P. 1019.16-5(b)(7).

Moreover, as discussed above, child support monies awarded under the Pennsylvania guidelines should be immediately available for the children's needs. *See MacKinley, supra* at 683. Accordingly, it was an abuse of discretion for the trial court to evaluate this factor based on the **potential** standard of living and we remand to the trial court to re-evaluate Pa.R.C.P. 1910.16-5(b)(7) without regard to the children's potential standard of living post-minority.

Father next avers that the trial court erred by requiring him "to pay child support on funds that went elsewhere, including Father's payment of $70,000 for the children's tuition, camps, and other activities, Mother's

withdrawal of funds from her 401(k), and Father's mandatory charitable contributions pursuant to an agreement with his law firm[.]" Father's Brief at 5.

Father fails to develop an argument in support of this claim, fails to cite to the record, and fails to provide citation to any authority and therefore we find this issue to be waived. ***See*** Pa.R.A.P. 2119; see also ***Commonwealth v. Kearney***, 92 A.3d 51, 66–67 (Pa. Super. 2014) (finding that claim is waived where Appellant fails to develop an argument in support of this claim, or to provide pertinent citation to authority.); ***see also Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) ("We shall not develop an argument for [an appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived.").

**AUGUST 9, 2013 REVISION TO Pa.R.C.P. 1910.16-3.1(a)(1)**

Father next avers that the "trial court erred as a matter of law by automatically redetermining child support based on the August 9, 2013 revision to Rule 1910.16-3.1(a)(1)[.]"[4] Appellant's Brief at 51. Without citation to authority, Father argues that Mother had the burden to prove that "the 'relevant factors' justified a deviation from the child support amount determined by the version of the Rule that was effective on May 1 [when the

---

[4] The August 2013 amendment changed the percentage used in the child support calculation from 8% to 11.6%.

- 25 -

parties' Agreement provided for a redetermination of child support]." ***Id.*** at 55. This claim is meritless.

The trial court opined:

> [B]ased on the language in Paragraph 22 of the Property Settlement Agreement that "either party may apply to the [c]ourt to adjust child support and/or their share of Child expenses for the year based on relevant factors," the amendment to Rule 1910.16-3.1 shall be considered and applied for the period after its effective date, August 9, 2013. The [c]ourt further conclude[s] that the Support Guidelines that are applicable herein are the amounts and percentages that were in effect on May 1, 2013 for the period May 1, 2013 to August 8, 2013: Two children: $3,777 + 8% of the combined net income above $30,000 per month; and for the period August 9, 2013 to April 30, 2014, the effective date of the amendment to Rule 1910.16-3.1, the amounts and percentages as follows: Two children: $3,836 + 11.6% of the combined net income above $30,000 per month.

Trial Ct. Op. at 19. We note that Rule 1910.19 provides that "[a] new guideline amount resulting from a new or revised support guidelines may constitute a material and substantial change in circumstances." Pa.R.C.P. 1910.19(a). Clearly, the trial court considered the differing guideline percentages between May of 2013 and August of 2013, in fashioning its award. Father's argument, thus, has no merit.

**EXPERT TESTIMONY**

Father next avers that the trial court erred when it refused "to permit expert testimony concerning whether the preliminary analysis under Pa.R.C.P. 1910.16-3.1(a)(1) would be inconsistent with the Income Shares Model and economic data underlying the Pennsylvania child support

guidelines." Father's Brief at 6. We find this claim to be waived as it was not adequately preserved in Father's Pa.R.A.P. 1925(b) Statement.

Pa.R.A.P. 1925(b) provides that an appellant must submit a statement that "concisely identif[ies] each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived." 1925(b)(4)(vii); *see also In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (stating this Court may find waiver where a concise statement is too vague).

In his 1925(b) Statement, Father presented, *inter alia*, the following issue:

> The trial court committed an error of law and abused its discretion by failing to properly consider and apply the requirements of 23 Pa.C.S. § 4322 and the Guidelines in holding that under Paragraph 22 of the parties' Property Settlement Agreement, the formula under Rule 1910.16-3.1(a)(1) of the Guidelines, effective on August 9, 2013 that changed from 8% to 11.6%, should automatically raise the Monthly Support Order from $60,539 to $86,158 (an increase of 42.3%), without consideration of . . .whether the increased rate was economically justifiable and appropriate under the circumstances of this case (including through consideration of expert testimony).

Father's Pa.R.A.P. 1925(b) Statement at 2.

Although Father's Rule 1925(b) Statement raises a challenge to the trial court's application of Rule 1910.16-3.1's increased percentage computation from 8% to 11.6%, it is only in his Brief that he asserts that the trial court erred by refusing to permit expert testimony regarding

whether preliminary analysis under Pa.R.C.P. 1910.16-3.1(a)(1) would be inconsistent with the Income Shares Model. Because Father failed to preserve this issue in his Rule 1925(b) Statement, his claim regarding exclusion of expert testimony is waived. *See* 1925(b)(4)(vii).

## JOINT CUSTODY REDUCTION

Father's final argument is that the trial court erred by disallowing the joint custody reduction *sua sponte*. Father's Brief at 57. Specifically, Father argues that he "never had an opportunity to present evidence or argue that this now discarded rule (that the joint custody reduction did not apply when the obligee's income is 10% or less of combined income) should not be applied in this case." *Id.* at 58.

> The trial court opined:
>
> In arriving at its calculation of [Father]'s child support obligation for the Support Year May 1, 2013 through April 30, 2014 and based on the language in Paragraph 22 of the Property Settlement Agreement, *see infra*, the Court properly applied the applicable guidelines in effect for that support year.
>
> Pa.R.C.P. Rule 1910.16-4(c)(3) in effect on May 1, 2013[,] through August 8[th] 2013[,] stated, in relevant part:
>
> > **(c) Substantial or Shared Physical Custody**
> >
> > . . .
> >
> > **Reductions for substantial or shared custody shall not apply when the obligor's income falls within the shaded area of the schedule in Rule 1910.16-3 or when the obligee's income is 10% or less of the parties' combined income.**

[B]y its terms, 1910.16-4(c)(3), referred to by [Father] as "joint custody reduction" was not applicable for the period May 1, 2013 through August 8, 2013 since [Mother]'s (obligee's) income was 10% or less of the parties' combined income.

By order dated April 9, 2013, Rule 1910.16-4(c)(3) was deleted, effective August 9, 2013.

The [c]ourt properly applied a reduction for joint custody that is reflected in the child support calculation after August 9, 2013[.]

Trial Ct. Op. at 23 (footnote omitted). We agree and find no error.

For the foregoing reasons, we affirm in part, reverse in part, and remand for the Court to (i) reverse all parts of the order which require a portion of the child support obligation to be placed in a PUTMA account; (ii) evaluate Pa.R.C.P 1910.16-5(b)(7) without consideration of the children's potential standard of living post-minority; (iii) evaluate Pa.R.C.P. 1910.16-5(b)(9) without determining a $2,500,000 downward deviation in Support Year 2013 because of Father's voluntary contribution to a trust for his children; and (iv) grant Mother's request for attorney's fees.

Order affirmed in part; reversed in part. Case remanded with instructions. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the opinion.

Judge Jenkins files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016