J-S07003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.J.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| D.F.K. | |
| | No. 1293 MDA 2016 |

Appeal from the Order Entered July 25, 2016
In the Court of Common Pleas of Columbia County
Domestic Relations at No(s): 00306-DR-2009
PACSES No. 421111164

BEFORE:  BOWES, LAZARUS, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 04, 2017**

B.J.S. ("Mother") appeals from the July 25, 2016 child support order, which established a monthly obligation of $764.78 on D.F.K. ("Father") for two children.  We vacate the order and remand for further proceedings.

Mother and Father married on January 4, 1999, and separated on September 12, 2009.  Two children were born of the marriage, D.J.K. and D.M.K., in 2002 and 2006, respectively.  On September 17, 2009, Mother filed a complaint for child support and spousal support.  On November 4, 2009, Mother obtained a child support award in the amount of $1,005.12 per month.  Due to the parties' respective incomes, Mother was not awarded spousal support.

This appeal arose from proceedings relating to a petition for modification filed by Mother on March 13, 2015. A master was appointed by the Columbia County Domestic Relations Office, and a hearing was held on December 17, 2015. At that hearing, Mother presented testimony regarding unreimbursed medical and tutoring expenses. Father clarified his income from wrestling camps that he operated and defended discrepancies between his total bank deposits and the income he claimed in his federal taxes. Father attributed the difference to money he earned from investments and his paramour's contribution to a shared credit account. The hearing was continued for additional testimony. A second hearing was held on March 24, 2016, and Mother and Father provided further detail regarding their income and child-related expenses.

On March 31, 2016, the master authored a recommendation and report awarding Mother child support of $764.68 per month. The award was calculated using an agreed upon a monthly earning capacity for Mother of $2,164.70, and $5,096.92 for Father based on the average of his Schedule C net income for 2013, 2014, and 2015. Utilizing the support guidelines, the master arrived at a child support award of $955.98 per month, which it then deviated downward pursuant to Pa.R.C.P. 1910.16-5, due to substantial other income in Mother's household provided by her current husband, G.S. The court made an additional twenty percent reduction pursuant to Pa.R.C.P. 1910.16-4(c), due to Father's significant period of partial custody.

Mother filed exceptions to the master's recommendation and report, and by order dated July 25, 2016, the trial court denied and dismissed those exceptions. The court adopted the master's report and confirmed the previously calculated child support award. Mother filed a timely appeal and a Rule 1925(b) concise statement of errors complained of on appeal. The trial court authored its Rule 1925(a) opinion adopting its analysis from the July 25, 2016 order, and finding the issues raised in Mother's Rule 1925(b) statement that were not included in her exceptions to be waived. This matter is now ready for our review.

Mother raises eleven issues for our consideration:

I. Whether the trial court erred by improperly adjusting [Father's] support obligation to account for [his] "substantial physical custody" when the record is clear that [Father] does not enjoy 40% or more custody of the children which was evidenced by the custody order entered into evidence.

II. Whether the trial court erred by failing to properly calculate [Father's] income when the trial court made a finding that [Father] had underreported his income, but then failed to include this underreported income when determining [Father's] proper net income for calculation of his child support obligations.

III. Whether the trial court erred in failing to order [Father] to contribute to the children's unreimbursed medical expenses which were properly preserved and presented to the court for reimbursement pursuant to the statute.

IV. Whether the trial court erred in *sua sponte* including the income of [Mother's] spouse as [Mother's] household income when calculating [Father's] child support obligation given [Father] never raised the issue at the hearing in this matter.

V.  Whether the trial court erred in including the income of [Mother's] spouse when no testimony or documentary evidence related to the spouse's income was presented at the hearing in this matter.

VI.  Whether the trial court erred in utilizing a 2013 W-2 found in the Columbia County Domestic Relations Office file for an unknown reason to support its finding as to [Mother's] household income when the form was not presented as evidence in the hearing and no testimony related to the form was presented.

VII.  Whether the trial court erred in not including [Father's] live in paramour's current payment to [Father] as part of [Father's] household income, when the trial court *sua sponte* included [Mother's] spouse's income from a period in which [Mother] was not married to or residing with [G.S.], her spouse.

VIII.  Whether the trial court erred in failing to award to [Mother] the cost of tutoring for the minor children to be as a reasonable expense, given that both [Mother] and [Father] consented to the tutoring and [Mother] properly preserved and presented the cost as evidence in the hearing on this matter.

IX.  Whether the trial court erred in failing to order [Father] to contribute to the cost of tutoring for children when [Father] consented to the tutoring and [Mother] properly preserved and presented the cost as evidence in the hearing on this matter.

X.  Whether the trial court erred in finding [Father's] childcare costs to be reasonable given the age and needs of the children during the summer months.

XI.  Whether the trial court erred in adjusting the child support calculation to include the childcare expenses [Father] claimed but provided no evidence to support the childcare expense.

Mother's brief at 5-7.

As a preliminary matter, we must determine whether Mother has preserved her claims for appellate review. It is well-settled that "a party

- 4 -

who is dissatisfied with a master's report [must] file exceptions to the report, or waive any such objections." **Lawson v. Lawson**, 940 A.2d 444, 450 (Pa.Super. 2007) (quoting **Benson v. Benson**, 515 A.2d 917, 919 (Pa.Super. 1986)); Pa.R.C.P. 1910.12(f) ("Matters not covered by exceptions are deemed waived[.]"). Instantly, Mother filed exceptions challenging the calculation of Father's income, the amount of Father's proportionate share of custody, the master's failure to require Father to contribute to the cost of tutoring, the deviation based on additional income in Mother's household, the inclusion of an earning capacity for Mother, and the master's failure to include the contribution of Father's paramour contribution to his income. Exceptions, 4/15/16, at unnumbered 1-2. Mother did not contest the master's conclusions with regard to the children's medical expenses or Father's childcare expenses. Accordingly, Mother's third, tenth, and eleventh issues are waived.

Turning now to the merits of Mother's appeal, we invoke the following standard of review:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***W.A.M. v. S.P.C.***, 95 A.3d 349, 352 (Pa.Super. 2014) (citation omitted).

Mother first argues that the trial court erred in reducing Father's child support obligation by twenty percent for "substantial or shared physical custody."[1]  Mother's brief at 18.  She maintains that a previous custody order accurately reflects the parties' custody arrangement.  That order, according to Mother, indicates Father exercised overnight custody of the children only thirty-two percent of the time, as opposed to the forty-percent necessary to justify a deviation under the support guidelines.

The support guidelines provide that an obligor may be entitled to a reduction in his child support payments "[w]hen the children spend 40% or more of their time during the year" with that parent.  Pa.R.C.P. 1910.16-4(c).  Where a parent presents evidence that he enjoys substantial physical

---

[1] We observe with reproach that Father has not filed a appellee's brief in response to Mother's appeal or to otherwise inform the court that he did not intend to do so.  Rather, Father, acting *pro se*, has filed financial documents with the apparent intention of providing the Court with updated financial records which has been docketed as his "appellee's brief."  We are obliged to inform Father that an appellee is required to file a brief that, at a minimum, contains "a summary of the argument and the complete argument of the appellee."  ***Commonwealth v. Pappas***, 845 A.2d 829, 835 (Pa.Super. 2004) (citing Pa.R.A.P. 2112).  As the financial documents are not part of the certified record, we have not considered them in the resolution of this matter.  Further, in light of the extremely sensitive nature of the confidential financial information contained within the "brief," we direct the Superior Court Prothonotary to strike Father's brief from our record to ensure that the information contained therein is not disseminated further.

custody, "a rebuttable presumption arises that the obligor is entitled to a reduction in the basic support obligation to reflect this time." *Id*.

Here, Father testified that he exercised custody over the children forty-three-and-one-half percent of the year. N.T. Modification Hearing, 12/17/15, at 25. Mother objected to this testimony contending that Father offered a legal conclusion based on an incorrect calculation. The master overruled that objection, but agreed to recalculate the percentage based on a pending custody order. *Id*. at 25-26.

In its March 31, 2016 report and recommendation, the master implicitly credited Father's testimony when it determined that Father retained custody of the children forty-three percent of the year. Hence, the master found, and the trial court confirmed, that Father's testimony raised the presumption accorded by Rule 1910.16-4, and that Mother's purported evidence failed to rebut that presumption. Thus, it reduced Father's support obligation accordingly.

As noted, Mother's argument is based on the existence of a child custody order that reveals Father has physical custody only thirty-two percent of the year. Upon review of the certified record, we find that no such custody order was entered into evidence or otherwise appended to the record. As such, we have no basis to conclude that the custody order was proffered to the master or that it evidenced that Father maintained custody of the children for less than forty-percent of the year. Since the trial court's

determination was supported by Father's credited testimony, Mother is not entitled to relief.

Next, Mother asserts that the trial court miscalculated Father's income when it failed to include his earnings from his wrestling camps, private wrestling clinics, and contributions to his household expense by his paramour, L.C.[2]  As this issue subsumes Mother's seventh issue, we will consider them together.  Mother alleges that Father's bank records showed deposits of approximately $141,000 for 2014.  However, Mother continues, Father only reported a net income of $68,000, after deducting his business

_____

[2] The term "income," for the purposes of the support guidelines, is defined as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302; Pa.R.C.P. 1910.2(a).

expenses of approximately $30,000. Mother further contends that Father conceded that he receives monthly payments from L.C. for their shared living expenses. Hence, she concludes that the trial court miscalculated Father's income, and that he should be assessed a higher monthly income than what was utilized in arriving at his support obligation.

The master's report and recommendation included the following findings of fact with regard to Father's income:

1. Father's [wrestling] camp income was only [$]696 in 2015, and no camps planned [sic] for 2016. Not assigning income from this in making this recommendation.

2. [Father's] business fluctuates. Gross income varies, but expenses are similar year-to-year. Using average of past 3 years income in this recommendation.

3. [Mother] presented evidence of $141,000 in cash flowing through [Father's] bank [account]. [Master was] not persuaded that this was all from his business. However, for sake of argument, even if there was some [additional] business income, you need to subtract business expenses to get net. That net would be subject to self-employment taxes in addition to income taxes, resulting in much lower amount than the $8,948 net/month proposed by [Mother].

Master's Report, 3/31/16, at unnumbered 3. The trial court adopted this position, observing, "[Father's] income was properly calculated . . . [t]he cash flow through [Father's] bank accounts does not alter this figure, as [Father] had adequate credible explanations (e.g., holding his [m]other's investments for placements[.])" Final Order, 7/25/16, at unnumbered 1 n.1. As it stands, the master attributed Father's additional income to his

- 9 -

business, and the trial court attributed the difference to cash he received on behalf of his mother. We find that the record does not support either of these findings.

Instantly, Mother presented evidence of a discrepancy between Father's reported 2014 income and the deposits in his sole bank account. N.T. Modification Hearing, 12/17/15, at 35-36; 70. Mother noted that Father had deposits totaling $141,617.83 in 2014, but he had reported income from his business tallying only $96,908. *Id*. at 70. When asked to explain the difference, Father averred, "I may have liquidated some investments – moved them into my account and reinvested them. Stuff like that." *Id*. at 71. Father conceded that some of the difference was due to his income from wrestling camps, but when he was pressed to explain the remainder, he stated, "I am thinking [I liquidated] other investments." *Id*. at 72. In addition, Father acknowledged that half of a $26,661.13 deposit in 2015 was his portion of a shared investment with his mother. *Id*.

We find the trial court erred in failing to include Father's deposits from his investments as income. Father's testimony indicated that he obtained large cash payments from his investments in 2014 and 2015. Although he did not explain the nature of his investments, in light of the expansive definition of "income" provided under the guidelines, we find Father's proceeds from his investments should have been included in the child support calculation. **See** 23 Pa.C.S. § 4302 (income includes, *inter alia*,

- 10 -

"income derived from business; gains derived from dealings in property . . . [and] dividends"); ***Spahr v. Spahr***, 869 A.2d 548, 552 (Pa.Super. 2005) (observing, "When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse."). Since Father testified that the discrepancy in his cash flow and reported income was due to his investments, the master erred in determining the discrepancy could be explained as additional, yet unaccounted for, business income. Moreover, the trial court erred in finding the money merely represented his mother's investments. Simply, the record does not substantiate these conclusions.

For the same reason, the court erred in failing to consider Father's wrestling camp earnings, as minimal as they may be. Father retained earnings from his work operating a wrestling camp. Father, himself, proffered evidence indicating that he earned $1,143 in 2014, and $696 in 2015 as a result of those efforts. Those earnings should be included in Father's income calculation.

Father also explained that he shared some expenses with L.C., noting, "Again every month. [L.C.] writes me a check. We split a credit card. I am guessing maybe one [deposit] is for a credit card. We also split property now. We split insurances for three vehicles." N.T. Modification Hearing, 12/17/15, at 76-77. For example, when questioned about a particular

$1,573.21 deposit, Father remarked, "That would probably be splitting a credit card expense[.]" *Id*. at 77.

We find that the court did not abuse its discretion in declining to include contributions L.C. made to Father's household expenses in adjusting Mother's support award pursuant to Rule 1910.16-5. We have long held that, once a court has consulted the guidelines, it "generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." *Hanrahan v. Bakker*, 151 A.3d 195, 203-204 (Pa.Super. 2016) (citation omitted). The support guidelines permit a deviation when the court determines that there is "other income in the household." Pa.R.C.P. 1910.16-5(b)(3). Essentially, Mother argues that it would be unfair to include her current husband's income, as discussed further *infra*, in determining the support award without also including L.C.'s income.

Here, the court noted there was no evidence regarding L.C.'s income. Further, it determined, based on Father's testimony, that L.C. "was bearing her share of household expenses." Final Order, 7/25/16, at unnumbered 1 n.1. The court presumed that L.C. "contributes what she consumes or expends." *Id*. Thus, it concluded that she did not have a net effect on Father's household income. Based upon Father's credible testimony and the lack of any evidence to the contrary, we discern no abuse of discretion in the court's refusal to include L.C.'s income in calculating the child support award.

Mother's fourth, fifth, and sixth issues all present a challenge to the court's reliance on G.S.'s income in deviating from the support guidelines. As noted above, the court has discretion to deviate from the guidelines for other household income where the deviation is supported by the record, and thus, we review these claims for an abuse of that discretion. *Hanrahan*, *supra*; Pa.R.C.P. 1910.16-5(b)(3).

Mother's argument in this regard is straight-forward. She insists that the trial court erred in deviating from the guidelines by considering G.S.'s income. Mother asserts that the record contains no evidence of G.S's income, and that the trial court's reliance on G.S.'s 2013 W-2, found in a domestic relations office file, was therefore in error. We agree.

Upon review of the certified record, there was no evidence offered during either the December 17, 2015 or March 24, 2016 hearing regarding G.S.'s income. Furthermore, although the trial court ruled that the 2013 W-2 form was evidence of record, *see* Final Order, 7/25/16, at unnumbered 1 n.1, that document was not included in the certified record. Hence, the trial court abused its discretion in deviating from the guidelines based on G.S.'s purported, but unsubstantiated, 2013 income.

Mother's final two claimed errors assail the trial court's failure to direct Father to contribute to the cost of tutoring for the children. Under the support guidelines, the court may direct an obligor to fund the "private school tuition or other needs of a child which are not specifically addressed

by the guidelines." Pa.R.C.P. 1910.16-6(d). If the court determines that "one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes." *Id*. Mother contends that Father assented to the reasonableness of their children's tutor by consenting to the children's participation in the tutoring program. Further, she asserts that the trial court erred in finding that "tutoring is not considered a necessary medical expense" since the payments relate to the children's educational, rather than medical, needs. Mother's brief at 34.

The trial court reasoned that "[t]utor expenses are not usual or necessary and, as such, should not be used to increase [Father's] support obligation." Final Order, 7/25/16, at unnumbered 1 n.1. It emphasized the master's finding that "neither child has an [individualized education program ("IEP")] or a Gifted IEP[.]" *Id*. The court supported its decisions by determining that "the record was devoid of evidence that a tutor is necessary." *Id*.

Mother testified to the necessity of the children's tutoring as follows: "They started in November. . . And I decided to continue that until the end of the school year in January. We renewed the tutoring sessions to complete the whole year because it was helping them through school. I felt they needed the service." N.T. Modification Hearing, 12/17/15, at 8. At the March 24, 2016 hearing, Mother declared that "They don't have IEP.

- 14 -

[D.M.K.] has Title 1, reading. And [D.J.K.] does speech." N.T. Modification Hearing, 3/24/16, at 11. When questioned as to whether the tutoring was related to these issues, Mother replied, "Yes. Language arts and reading issues, yes." *Id*.

Contrary to the court's findings, the record does support the finding that a tutor is a reasonable educational expense. Mother testified that the children's tutoring was related to D.M.K.'s difficulty with reading and D.J.K's struggle with speech. Such struggles clearly implicate educational needs rather than medical needs. Furthermore, Father did not contest the allegation that he consented to the children's tutoring, or that he found the additional expense to be unreasonable. *See Silver v. Pinksey*, 981 A.d 284 (Pa.Super. 2009) (holding expenses related to children's extra-curricular activities were reasonable since, in part, father did not argue expenses were unreasonable). Hence, we find that the trial court abused its discretion in failing to assign to Father his proportionate share of the children's tutoring costs.

In summary, we find the court did not abuse its discretion in deviating from the support guidelines in regards to Father's substantial partial custody or L.C.'s contributions to Father's household expenses. The court did err in calculating Father's income, applying a deviation from the guidelines based on G.S.'s 2013 income, and failing to attribute to Father his proportionate share of the children's tutoring expenses. Accordingly, we vacate the

- 15 -

support order and remand for recalculation of Father's net income and support obligation in accordance with this memorandum.

The Prothonotary of the Superior Court is directed to strike the document docketed as Appellee's brief, which shall not be disseminated. Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2017